Jessee E. SWANNER, Wilma S. Swanner, Jacqueline Ann Gibson, a minor three years of age, who sues by and through Jack Gibson, her father and next friend, Susan Renee Gibson, a minor two years of age, who sues by and through Jack Gibson, her father and next friend, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 2517-N.

United States District Court
M. D. Alabama, N. D.

Nov. 21, 1967.

Ira DeMent, Montgomery, Ala., and William A. Oldacre (of Hill, Hill, Stovall & Carter), Montgomery, Ala., for plaintiffs.

Ben Hardeman, U. S. Atty., Montgomery, Ala., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT

JOHNSON, Chief Judge.

This case was commenced pursuant to the provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq., by the above-named plaintiffs seeking to recover damages for personal injuries and property damage sustained in an explosion of a dwelling house which they were occupying. This Court, having considered the pleadings and the evidence presented at the trial of this matter, now makes the following findings of fact and conclusions of law.

Plaintiff Jessee E. Swanner was employed by the Alcohol and Tobacco Tax Division of the Internal Revenue Service as a "special employee" to aid in the undercover investigation of illicit whiskey operations in Giles County, Tennessee. As a result of information developed in this investigation, indictments were returned against several persons in and around Giles County, Tennessee, including one Ed McGlocklin. As is usually required in this type employment, Swanner has testified against two persons accused of violations of the internal revenue laws and has been subpoenaed, but has not given testimony, in at least two other similar cases. He was also scheduled to give testimony before a federal grand jury in Giles County, Tennessee, on April 25, 1966.

About 11:55 p. m. on April 22, 1966, a bomb exploded under the house at 420 South Goldthwaite Street, Montgomery, Alabama, then occupied by the four plaintiffs. The bomb demolished one side of the house, damaged and destroyed

the furniture in the house, and injured all four of the plaintiffs; however, only Wilma S. Swanner was seriously injured. Plaintiffs commenced this action against the defendant United States on the theory that the government had negligently breached its duty to protect Swanner and his family and that it had heedlessly imparted a false impression of safety and lack of danger.

In the course of his duties with the Alcohol and Tobacco Tax Division of the Internal Revenue Service, plaintiff Jessee E. Swanner came into contact with one Ed McGlocklin. McGlocklin was engaged in the production and sale of nontaxpaid whiskey. He had both a general reputation and history of being a man of violence, with whom local law enforcement agencies were unable to cope. On at least one occasion prior to the discovery by the group engaged in the illicit whiskey operation of Swanner's relation with the government, McGlocklin, in the presence of Swanner and another government undercover agent, had stated that he would kill anyone who informed the authorities of his violations of the liquor laws. Subsequent to his discovery of Swanner's role as an undercover agent, McGlocklin, with knowledge that Swanner was residing in the area of Montgomery, Alabama, stated that Swanner would never testify against him. This threat was indirectly communicated to Swanner on April 18, 1965.

Swanner, a previously convicted felon who had served one term in the state penitentiary, was not regularly employed prior to the bombing of his home. His principal source of income at the time was derived from part-time work for A. B.C. Motor Company. This work consisted of repossessing used automobiles on which the purchasers were in default.

The government, through the agents of the Alcohol and Tobacco Tax Division of the Internal Revenue Service, had knowledge not only of the generally dangerous nature of undercover work, but also of the threats made concerning informers generally and Swanner specifically prior to the bombing. Immediately

after learning of the threat made by McGlocklin, Swanner called Niles Keathley, the agent in charge of the Nashville office of the Alcohol and Tobacco Division of the Internal Revenue Service. Upon learning from agent Keathley that McGlocklin was at large and being sought by the Alcohol and Tobacco Tax Division of the Internal Revenue Service, Swanner volunteered to come to Tennessee and to act as a decoy to aid in the apprehension of McGlocklin. He was advised not to take this course, that he would be safe from McGlocklin as long as he stayed in Alabama. Swanner also called Tom Allison, the agent in charge of the Montgomery office of the Alcohol and Tobacco Tax Division of the Internal Revenue Service, who also advised him that, in his judgment, he was safe from McGlocklin as long as he remained in Alabama. At no time did Swanner request that agents be assigned to protect him and the members of his family.

The Police Department of the City of Montgomery, Alabama has made, and is continuing to make, a thorough investigation of the bombing. From the physical evidence at the scene, the Police Department has concluded, and this Court finds, that the explosion was an unnatural one and was procured by human agency. Officers of the Montgomery Police Department also testified as to standard police procedure in cases in which knowledge is obtained of a threat to a member of the community. That procedure is to furnish, without request, police protection in the form of a "stakeout" and increased patrol activity in the neighborhood. Upon request, individual officers would be assigned to the person threatened. Swanner, since no such request was made, was without such protection from any agency at the time of the bombing of his house.

Swanner did not own the house in which he was living, but the house was fully insured. At the time of the bombing, Swanner's lessor was in arrears on the payment of his mortgage on the house which he had leased to Swanner, and the lessor had been put on notice that if

the deficiency was not made up fore-closure might be necessary.

Jacqueline Ann Gibson and Susan Renee Gibson, granddaughters of plaintiffs Jessee E. Swanner and Wilma S. Swanner, each claim, separately, through their father and next friend, the sum of $5,000 for personal injuries received in the explosion. At the time of the explosion, each of the girls was asleep with one of her grandparents in separate rooms of the house. Their injuries consisted of superficial cuts, scratches and bruises. Neither child required medical attention.

Mrs. Wilma S. Swanner was the most seriously injured of the plaintiffs. She claims the sum of $25,000 for permanent personal injuries and incidental medical expenses. As a result of a serious fracture of the pelvis, she required three weeks of hospitalization and further bed rest at home. When she became ambulatory, she could not walk without the assistance of crutches for a period of some six months. As a result of a severe laceration, which penetrated her left cheek and caused her to lose three teeth, she now has a facial scar on the left cheek. She also has other scars from lacerations on her chin and legs. Mrs. Swanner's skull was fractured, resulting in pain and dizziness accompanied by occasional periods of unconsciousness when she assumes a reclining position or suddenly changes position.

Plaintiff Jessee E. Swanner claims the sum of $26,500 for personal injuries, loss of services of his wife, and damage to personal property. The damage to personal property consisted of furniture and other household goods of the value of $1,500 which was destroyed, or damaged beyond repair, in the explosion. His personal injuries in the explosion proper consisted of minor cuts, scratches and bruises. He suffered serious cuts of both feet and of both hands in an attempt to extricate his wife from the rubble. He does not claim any medical expenses in connection with the emergency treatment of these cuts. Prior to the accident, Mrs. Swanner was able to do all their house-work without assistance. She can no longer do such work, and Mr. Swanner has had to either do the work himself or employ outside help.

■ This Court has jurisdiction of the parties and the subject matter of this action. 28 U.S.C. § 1346(b). It has been previously determined by this Court, in ruling on the motion of the United States for summary judgment, that the United States may be liable under the Federal Tort Claims Act for its failure to provide police protection where, as here, the decision not to provide such protection is made by an agent of the United States acting within the line and scope of his employment. It has also been previously determined, in connection with the government's motion for summary judgment, that the failure to provide protection was not a decision made in the exercise of a discretionary function within the meaning of 28 U.S.C. § 2680(a). Rayonier, Inc. v. United States, 352 U.S. 315, 77 S.Ct. 374, 1 L. Ed.2d 354 (1957). Where such claim of exemption from liability is advanced, a court must look to "the nature and quality of the discretion involved in the acts complained of." Smith v. United States, 375 F.2d 243 (5th Cir. 1967), now on appeal to the Supreme Court. See 389 U.S. 841, 88 S.Ct. 76, 19 L.Ed. 2d 106. Even though every action or inaction involves some measure of discretion on the part of some government employee, *Smith*, supra, decisions not to provide protection to persons the United States is under a duty to protect are not within the discretionary function exception to the Federal Tort Claims Act. United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963); Cohen v. United States, 252 F.Supp. 679 (N.D.Ga.1966).

Plaintiffs rely on Schuster v. City of New York, 5 N.Y.2d 75, 180 N.Y.S.2d 265, 154 N.E.2d 534 (1958). In that case, Arnold L. Schuster provided authorities of the City of New York with information leading to the arrest of Willie Sutton, a dangerous fugitive from justice with a nationwide criminal repu-

tation. Thereafter, Schuster received threats on his life which he communicated to the Police Department of the City of New York. Following withdrawal of the partial police protection which he had been given, Schuster was shot and killed on a street near his home by an unknown assassin. Schuster's estate sued the City of New York on the theory that its negligence in failing to provide police protection was the proximate cause of Schuster's death. A demurrer was sustained to the complaint in the trial court. The Court of Appeals reversed, holding, *inter alia,* that "the public * * * owes a special duty to use reasonable care for the protection of persons who have collaborated with it in the arrest or prosecution of criminals, once it reasonably appears that they are in danger due to their collaboration." 5 N.Y.S.2d at 80–81, 180 N.Y.S.2d at 269, 154 N.E.2d at 536. The Court also observed that:

> "This being a motion addressed to the sufficiency in law of the complaint, the objection taken by the city may be dismissed at once that plaintiff will be unable to prove that Schuster's death was the result of his having informed upon Sutton. It is a sufficient answer to that objection that the complaint alleges that Schuster's death did result from the negligence of the city previously stated. No more needs to be alleged in a pleading [citing case]. It would be premature to hold now that plaintiff will be unable to prove this allegation at the trial for the reason that no individual has been indicted thus far for Schuster's murder. Plaintiff is entitled to a day in court upon this issue, which should not be prejudged in advance of trial. Perhaps by the time of the trial the identity of Schuster's murderer will have become known and the cause of his act be further clarified. It might even be held, without identification of Schuster's assailant, that the probability is so great of his having been shot by reason of his disclosures resulting in Sutton's capture, that a question of fact would be created on this issue. Questions such as that should be reserved for a trial, and cannot be disposed of by a motion to test the legal sufficiency of the complaint on which all of the allegations of fact must be assumed to be true."

5 N.Y.S.2d 80, 180 N.Y.S.2d 268–269, 154 N.E.2d 536. See also Fair v. United States, 234 F.2d 288, 295–296 (5th Cir. 1956). Thus, plaintiffs here were given an opportunity to present their evidence.

██ This Court concludes that, under the circumstances existing, the United States Government was under a duty to provide Swanner and the members of his family with police protection. As was said in the case of In re Quarles, 158 U.S. 532, 536, 15 S.Ct. 959, 961, 39 L.Ed. 1080 (1895):

> "The right of a citizen informing of a violation of law, like the right of a prisoner in custody upon a charge of such violation, to be protected against lawless violence, does not depend upon any of the amendments to the constitution, but arises out of the creation and establishment by the constitution itself of a national government, paramount and supreme within its sphere of action. * * *"

Whenever there is reasonable cause to believe that a government agent or employee, or any member of his family, is endangered as a result of his performance of his duty to the government, a duty on the part of the government to protect him and the members of his family arises. This duty arises without the necessity for formal request on the part of the person(s) endangered. It arises upon the communication to the government of facts which would create a reasonable belief that a government employee, or his family, is endangered as a result of his performance of duty, and it is immaterial whether the information is received directly from those endangered or from some other source.

██ The duty of the United States is not distinguishable in this case because Swanner was a "special employee" of the

government who received compensation for the information he supplied. The idea of offering a reward to government employees or private citizens for the "energetic performance of public duty" is firmly rooted in the public policy of this country. United States v. Matthews, 173 U.S. 381, 386, 19 S.Ct. 413, 43 L.Ed. 738 (1899); cf. Dorsheimer v. United States, 7 Wall. 166, 173, 19 L.Ed. 187. The remedy against a governmental instrumentality which breaches its duty to provide police protection is a common-law remedy, *Schuster*, supra, 5 N.Y.2d at 85, 180 N.Y.S.2d at 273, 154 N.E.2d 534, and Alabama is a common-law state. Title 1, § 3, Code of Alabama (1940) (Recomp. 1958). The presence or absence of an offer of reward, or of other compensation, does not affect the duty of governmental employees, as well as other citizens, to cooperate with law enforcement agencies by providing information as to known violations of the criminal laws. Nor is the duty of law enforcement agencies to protect those who cooperate with them lessened by the payment of a reward. The offer of a reward may make it more appealing to a member of the public to perform his duty, but once that duty has been performed, no matter how mercenary the motives of the person supplying the information, the duty to offer protection to such person and the members of his family arises.

■ As in any case based upon negligence, cases brought under the Federal Tort Claims Act place the burden on the plaintiff to prove not only that the government was negligent, Ray v. United States, 228 F.2d 574 (5th Cir. 1956), cert. denied 351 U.S. 968, 76 S.Ct. 1034, 100 L.Ed. 1487, but also that such negligence was the proximate cause of the injuries complained of. United States v. Inmon, 205 F.2d 681 (5th Cir. 1953). Here, the plaintiffs have failed to prove that their injuries were proximately caused by the government's negligence.

There is no question in this case but that the government negligently breached its duty to provide protection to Swanner and his family. Nor is there any question but that at least two of the plaintiffs suffered damages which would be compensable if they were proximately caused by the government's negligence. The only proof on the element of proximate cause in this case is that Swanner indirectly received a threat from a man of known dangerous propensities who surrendered himself to federal authorities in Tennessee the day following the bombing. There is not one shred of evidence to indicate that McGlocklin or any of his associates in the illicit whiskey business were anywhere near Montgomery at any time. Nor is there a hint of evidence to suggest that they procured in any way the bombing of Swanner's home. The Court of Appeals of New York suggested in *Schuster* that it might be possible to create a case of circumstantial evidence so strong as to lead the mind inevitably to the conclusion that injury to a person who supplied information to the police resulted from his having supplied such information. This is not such a case. Schuster was not "an underworld character. On the contrary, he appears to have been a public spirited young man who had studied Sutton's picture on an FBI flyer that had been posted in his father's dry-goods store, asking for Sutton's whereabouts." 5 N.Y.2d at 79, 180 N.Y.S.2d at 268, 154 N.E.2d at 536. A concurring opinion reemphasized an allegation of the complaint, accepted as correct, that Schuster was "a law abiding citizen with no reason to anticipate harm from any source * * *." 5 N.Y.2d at 87, 180 N.Y.S.2d at 275, 154 N.E.2d at 541. By contrast, Swanner was a convicted felon whose occupation was the repossession of automobiles and who lived in a heavily insured house on which the mortgage was in arrears. It is reasonable that harm might have been intended Swanner from several sources.

In accordance with the foregoing, it is the order, judgment and decree of this

Court that the claims of the plaintiffs, and of each of them, in this cause, be and each is hereby denied.

It is ordered that the costs in this cause be and they are hereby taxed against the plaintiffs, for which execution may issue.