Robert CRAIN, Plaintiff,

v.

James R. KREHBIEL, Robert H. Siegel, and United States of America, Defendants.

No. C–76–1018–CBR.

United States District Court, N. D. California.

Dec. 5, 1977.

On Motion for Reconsideration Feb. 3, 1978.

204

Vernon L. Bradley, Bradley & Crichton, San Rafael, Cal., for plaintiff.

James L. Browning, Jr., U. S. Atty., George Christopher Stoll, Asst. U. S. Atty., San Francisco, Cal., for defendants.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

This action concerns the duty of the United States to informants who provide information about criminal activity.

Plaintiff gave agents of the Drug Enforcement Administration ("DEA") information which led to the seizure of approximately one-half ton of marijuana and to the arrest and conviction of Scott Lamkin in the United States District Court for the Northern District of California. On Monday, October 7, 1974, plaintiff initiated contact with DEA and voluntarily supplied a limited amount of information about Lamkin, who was then a friend of plaintiff and his wife. Plaintiff does not contend that the agent to whom he spoke on October 7, Agent Harry Plattos, made any untrue or improper threats or promises.

On Thursday, October 10, 1974, plaintiff returned to the DEA offices at the request of federal agents who wanted more specific information about the alleged criminal activity. At that meeting plaintiff talked first with Agent Plattos and then Agents James R. Krehbiel and Robert H. Siegel. According to plaintiff, he at first refused to provide more specific information about his charges against Lamkin because the agents would promise only to try to keep his identity confidential and would not categorically assure anonymity. Plaintiff's Deposition of March 1, 1977 ("Plaintiff's Deposition"), at 28–29. According to plaintiff, Agent Krehbiel refused at that stage of the discussion to make any promises that plaintiff would not have to testify, but he did promise protection and funds for relocating plaintiff. Plaintiff's Deposition, at 29. Plaintiff says that he agreed to supply details of the offense only after the agents promised to keep his identity secret. *Id.*, at 29–30. Plaintiff's deposition is somewhat ambiguous about the specific nature of the agents' promises, but a jury could reasonably infer from plaintiff's account that the agents unconditionally promised plaintiff that he would never have to testify and that his identity would never be revealed.

According to the agents, they told plaintiff that DEA would make every effort to maintain the confidentiality of plaintiff but that a court might require disclosure of his identity. Deposition of James R. Krehbiel on October 1, 1976 ("Krehbiel Deposition"), at 12–13; Affidavit of James R. Krehbiel on March 30, 1977 ("Krehbiel Affidavit"), at 2; Deposition of Robert H. Siegel on October 1, 1976 ("Siegel Deposition"), at 6.

After the October 10th meeting, Lamkin was arrested and the cache of marijuana seized.

On or about October 26, 1974, plaintiff met with Agents Krehbiel and James F. Sherrington at a restaurant in San Rafael, California. The agents offered plaintiff a $100 reward, which he refused to accept. The agents also obtained plaintiff's signature on a written statement which they brought with them to the restaurant. At first, plaintiff refused to sign the statement. Plaintiff alleges that Agent Sher-

rington told him "that they could just burn me in court anyway, whether I signed the statement or not," and that he signed the statement "when [Agent Krehbiel] said that no one would see it but the judge." Plaintiff's Deposition, at 46–47. Plaintiff does not recall whether the agents told him that he might have to testify if the case against Lamkin went to trial, but he does remember that the agents told him the alternative to signing the statement was that he could be subpoenaed and thereby exposed. *Id.*, at 48. Plaintiff also stated that he told the agents that he wanted to have the charges against Lamkin dropped "[i]f it meant that I would [not] have to testify," *id.*, at 48–49, so plaintiff apparently was informed of the possibility that he would have to testify if the case against Lamkin went to trial.

Agent Sherrington denies ever telling plaintiff that DEA would "burn" him in court, Deposition of James F. Sherrington on March 1, 1977 ("Sherrington Deposition"), at 21, and Agent Krehbiel also denies that plaintiff was threatened with unnecessary exposure for failure to sign the statement. Krehbiel Deposition, at 21–22; Krehbiel Affidavit, at 3. Agent Sherrington admits that he told plaintiff the DEA would try to keep his identity confidential, Sherrington Deposition, at 36, but insists that he never guaranteed the success of those efforts. According to Agent Sherrington, plaintiff was told that a signed statement was needed in order to comply with DEA policy and to refresh plaintiff's recollection should he ever be called to testify. Sherrington Deposition, at 35.

At the October 26 meeting, plaintiff told the agents that he had information about a certain dealer in cocaine. Plaintiff admits that his statements were completely false. Plaintiff's Deposition, at 49, 80. He said he told these lies because he thought the DEA might drop the charges against Lamkin if he provided more information and that he might therefore not have to testify. *Id.*, at 49–50; Sherrington Deposition, at 22–24.

After the meeting at the restaurant on October 26, plaintiff retained Vernon L. Bradley as counsel. Attorney Bradley claims that on or about November 11, 1974, Agent Dominic P. Petrossi promised him that he would be notified before his client would be subpoenaed. Affidavit of Vernon L. Bradley on April 11, 1977, at 2. Agent Petrossi remembers that he met with Attorney Bradley but none of the details of that meeting. Affidavit of Dominic P. Petrossi on March 31, 1977, at 1–2.

On approximately January 16, 1975, plaintiff was served at his home with a subpoena by Agent Krehbiel. Attorney Bradley was not notified before its issuance.

Plaintiff testified in response to that subpoena at an *in camera* hearing before Judge Orrick. Defendants do not controvert Attorney Bradley's claim that he had to engage in considerable effort in order to have the hearing held *in camera* rather than in open court.

In the spring of 1975, plaintiff told Lamkin that he provided the information which led to Lamkin's arrest and conviction. Plaintiff's Deposition, at 62–66. Plaintiff does not contend, and has no basis in the record to contend, that DEA agents ever told or in any way suggested to Lamkin the identity of the informant.

Plaintiff alleges that as a result of the intimidation, threats, and other misconduct of defendants, he suffered extreme emotional distress which required medical treatment, incurred substantial legal expenses, was forced to take time off from his job, and experienced domestic problems which ended in his divorce. On the evening of Lamkin's arrest in October, 1976, plaintiff told his wife that he provided the information leading to that arrest. Plaintiff's Deposition, at 40. When plaintiff spoke to Lamkin after Lamkin was released on bail, Lamkin told plaintiff that he would kill the informant responsible for his arrest. *Id.*, at 80. Plaintiff found a threat on the windshield of his truck after Lamkin's conviction but before Lamkin went to jail, and plaintiff believes that Lamkin was responsible. *Id.*, at 83. Plaintiff believes that on a previous occasion, Lamkin had thrown a two-

by-four through the window of an individual who Lamkin suspected was an informant, *id.*, at 84, and plaintiff believes that Lamkin and some of his associates carried firearms. *Id.*, at 81–83.

■ Plaintiff filed this complaint on May 19, 1976. He alleges causes of action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680, the United States Constitution, and California tort law.[1] He invokes the jurisdiction of the Court pursuant to 28 U.S.C. § 1346(b) for his FTCA claim, to 28 U.S.C. § 1331 for his constitutional claim and to the pendent jurisdiction doctrine of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), for his state claim. On April 4, 1977, defendants filed a motion to dismiss or, in the alternative, for summary judgment. The Court grants in part and denies in part that motion.

## I. FEDERAL CAUSES OF ACTION

### A. Claims Against the Agents

#### 1. Federal Tort Claims Act

■ Under the FTCA, the "United States" is liable for tortious injuries to private individuals. 28 U.S.C. § 2674. The Act creates no cause of action against employees of the United States. *United States v. Gilman*, 347 U.S. 507, 509, 74 S.Ct. 695, 98 L.Ed. 898 (1954); *Williams v. United States*, 405 F.2d 951, 954 (9 Cir. 1969); *Turner v. Ralston*, 409 F.Supp. 1260, 1261 (W.D.Wis.1976).

#### 2. United States Constitution

■ In order to establish an implied right of action against federal agents under the Constitution, plaintiff must show (1) that the agents violated a right secured by the Constitution,[2] and (2) that an implied damage remedy is necessary or appropriate to compensate the victim and to effectuate the policy underlying the constitutional right. Plaintiff has not established the first element.

Plaintiff claims that defendants have abridged or threatened to abridge his constitutionally guaranteed right of privacy by threatening to publicly disclose his role in the Lamkin case.

■ Privacy is a word of many meanings, and it is necessary at the outset to identify three different types of privacy which the Constitution can involve. The first is the right of the individual, secured by the Fourth Amendment, to be free from unreasonable government searches and surveillance. *Whalen v. Roe*, 429 U.S. 589, 599 n.24, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). This aspect of privacy is not involved in this case. The second kind of privacy interest protected by the Constitution is "the individual interest in avoiding disclosure of personal matters * * *." *Id.*, at 599 & nn. 24–25, 97 S.Ct. at 876. This right has been well characterized as the " 'right of selective disclosure,' [which] is concerned with the ability of 'individuals, groups, or institutions to determine for themselves when, how, and to what extent information about them is communicated to others.' " Note, *Roe* and *Paris* : Does Privacy Have a Principle?, 26 Stan.L.Rev. 1161, 1163 (1974) (footnotes omitted) (hereinafter cited as "Stanford Note"). The third variety of

---

1. Plaintiff makes occasional mention of causes of action "for violations of civil rights as found in 42 U.S.C. 1981 [*sic*] et seq. * * *." Letter of February 18, 1977, from Vernon L. Bradley to the Court. Plaintiff nowhere develops this claim, and those statutes generally apply to state action, which is obviously not an issue in a suit against the United States and its agents. Sections 1981 and 1982 apply to racial discrimination by the federal government, *District of Columbia v. Carter*, 409 U.S. 418, 422, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973); *Bowers v. Campbell*, 505 F.2d 1155, 1157–1158 (9 Cir. 1974), but that also is obviously not an issue here. Since these claims seem to be meritless and since plaintiff has neglected them almost completely, the Court considered them to be abandoned.

2. The Constitution may create an implied right of action for damages for denial of constitutional rights other than those based on the Fourth Amendment, as in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *Jacobson v. Tahoe Regional Planning Agency*, 558 F.2d 928, 941–942 & n.23 (9 Cir. 1977).

constitutional privacy interests involves "the interest in independence in making certain kinds of important decisions." *Whalen, supra,* 429 U.S. at 599–600 & n.26, 97 S.Ct. at 876. This variety "is concerned with a more generalized ability of individuals to determine for themselves whether to perform certain acts or to undergo certain experiences." Stanford Note, *supra,* at 1163 & n.17. This "constitutional protection of individual autonomy," *see Carey v. Population Services International,* 431 U.S. 678, 687, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977), is generally limited to "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education." *Paul v. Davis,* 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976). For the sake of clarity, the third type of privacy will be called throughout this opinion the right of autonomy, to distinguish it from the second type, for which the label right of privacy will be exclusively reserved.

■ To the extent that plaintiff asserts a general constitutional right of privacy (as distinguished from a right of autonomy), his claim fails because no such right exists. "[T]he protection of a person's *general* right to privacy—his right to be let alone by other people—is, like the protection of his property and of his very life, left largely to the law of the individual States." *Katz v. United States,* 389 U.S. 347, 350–351, 88 S.Ct. 507, 510, 19 L.Ed.2d 576 (1967) (emphasis in original) (footnotes omitted). The tort of public disclosure of private facts, the privacy tort most nearly applicable to plaintiff's situation, has been increasingly recognized in state tort law. *See, e. g., Briscoe v. Reader's Digest Ass'n,* 4 Cal.3d 529, 93 Cal. Rptr. 866, 483 P.2d 34 (1971); *Virgil v. Time, Inc.,* 527 F.2d 1122 (9 Cir. 1975), *cert. denied,* 425 U.S. 998, 96 S.Ct. 2215, 48 L.Ed.2d 823 *on remand,* 424 F.Supp. 1286 (S.D.Cal.1976); American Law Institute, Restatement (Second) of Torts § 652D (1977); Note, Privacy in the First Amendment, 82 Yale L.J. 1462 n.3 (1973); Prosser, Privacy, 48 Cal.L.Rev. 383 (1960). The federal government as well has taken steps to protect the privacy of informants in criminal cases and of all citizens who are the subject of federal governmental files. 5 U.S.C. § 552a; *McCray v. Illinois,* 386 U.S. 300, 309 & n.10, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967) (informer's privilege); 2 Weinstein's Evidence ¶ 510[02] at 510–19—510–20 (1976). State and federal statutory and common law is the basic source of an individual's right to privacy.

■ Conduct that is tortious is not made unconstitutional merely because the tortfeasor is a government official. No more than the procedural guarantees of the Due Process Clauses of the Fifth and Fourteenth Amendments are the source of a body of general federal tort law, *Paul v. Davis, supra,* 424 U.S. at 701, 702 n.3, 96 S.Ct. 1155, do their substantive guarantees create such a corpus. The Constitution does not secure all individual rights against governmental interference. *See Rosenberg v. Martin,* 478 F.2d 520, 524–525 (2 Cir. 1973); *Johnson v. Hackett,* 284 F.Supp. 933, 939–940 (E.D.Pa.1968). Just as it is not a Freedom of Information Act, Stewart, "Or of the Press," 26 Hast.L.J. 631, 636 (1975), the Constitution is not a federal privacy act.

■ As a general rule, government action that does not cause some "alteration of legal status" does not violate the Constitution. *Paul v. Davis, supra,* 424 U.S. at 708, 96 S.Ct. 1155. In *Paul,* the Supreme Court held that injury only to an individual's reputation caused by governmental action does not without more implicate the Due Process Clauses of the Fifth or Fourteenth Amendments. *See Paul, supra,* 424 U.S. at 702 n.3, 96 S.Ct. 1155 (same analysis under Fifth and Fourteenth Amendments). Although the Supreme Court limited its consideration to "the procedural guarantees of the Due Process Clause" and did not intend "to describe those substantive limitations on [federal or] state action which may be encompassed within the concept of 'liberty' expressed in the [Fifth or] Fourteenth Amendment," *id.,* 424 U.S. at 710 n.5, 96 S.Ct. at 1165, the substantive protections of the Constitution normally extend to the same interests that are within the scope of

its procedural protections, for procedural protections are necessary only to increase the likelihood that the correct substantive results are reached. It would make no sense for a court to substantively review governmental action to determine whether it was rationally related to a legitimate governmental interest or whether it was the least restrictive means to further a compelling governmental interest if the court could not also engage in procedural review to make sure that the government had followed procedures which adequately accommodated the individual's interest in a fair result and the government's interest in an efficient as well as fair result. The Constitution does not regulate an end without regulating also the means to that end.

 Plaintiff attacks only the substance of defendants' alleged actions, not the procedure they followed. The essence of plaintiff's contention is that defendants' threatened disclosure of his role in the Lamkin case would stigmatize him in the eyes of his family and friends and expose him to retaliation by Lamkin and his associates. This privacy interest is analogous to the reputation interest that *Paul* found constitutionally unprotected. As a result, plaintiff's failure to allege any actual or potential "alteration of legal status" caused by defendants' threatened conduct defeats his general constitutional claim that his right of privacy was violated.

 This is not to say that public disclosure of private facts can never violate the Constitution. As the Supreme Court noted (and refused to decide) in *Whalen, supra,* 429 U.S. at 605–606, 97 S.Ct. 869, the duty to avoid unwarranted disclosures of personal information which is potentially embarrassing or harmful if disclosed arguably has constitutional as well as statutory and regulatory roots.[3] Where such disclosure does violate a right secured by the Constitution, the violated right is not any right of privacy but some other right whose exercise is deterred or hampered by disclosure. See Project, Government Information and the Rights of Citizens, 73 Mich.L.Rev. 971, 1292–1293 (1975). For example, "compelled disclosure, in itself, can seriously infringe on privacy of association and belief guaranteed by the First Amendment." *Buckley v. Valeo,* 424 U.S. 1, 64, 96 S.Ct. 612, 656, 46 L.Ed.2d 659 (1976) (per curiam). In these areas, the Constitution secures the right of privacy because that right is "indispensable" to some other constitutional right. *See NAACP v. Alabama,* 357 U.S. 449, 462, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) (freedom of association and disclosure of group membership lists). The critical questions are whether and how involuntary disclosure of private information affects the exercise of a right independently secured by the Constitution.

The right to privacy, as defined here, is a derivative right recognized in order to protect fundamental personal rights directly secured by the Constitution. This limitation of the constitutional right of privacy is the only way to prevent its invasion from becoming a general constitutional tort. Unless the constitutional right of privacy is defined as a derivative right involving instances where the government tries to collect or disseminate information concerning constitutionally protected activity, there is no principled way to differentiate between involuntary disclosure of private facts

---

**3.** The Court notes that the holding on the right to privacy in *Paul v. Davis, supra,* 424 U.S. at 712–713, 96 S.Ct. 1155, does not mean otherwise. The Supreme Court in *Paul* held that public dissemination by government officials of information in a public record infringes no constitutional rights of individuals affected by the dissemination. That principle cannot automatically be extended to disclosure of sensitive personal information not already included in a public record, like the information in this case. If a legitimate governmental interest is served by maintaining the record publicly (and at least the plaintiff in *Paul* did not contend otherwise), any additional notoriety given the information in that record may not inflict any constitutionally cognizable injury on the subject of the record. As the Supreme Court pointed out in *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 494–495, 95 S.Ct. 1029, 1046, 43 L.Ed.2d 328 (1975), "even the prevailing law of invasion of privacy generally recognizes that the interests of privacy fade when the information involved already appears on the public record."

which does violate the Constitution and that which does not.[4]

The Court must therefore consider whether the disclosure of plaintiff's involvement in the *Lamkin* case violates his right of autonomy, the second type of privacy right included in his constitutional claim.

Both courts and commentators have had considerable difficulty identifying the common denominator of the activities that have been held to be within the constitutional right of autonomy. The six opinions in *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (criminal statute prohibiting use of contraceptives by married couples held unconstitutional), the first Supreme Court modern case resurrecting substantive due process in areas of individual autonomy, illustrate the confusion and lack of consensus concerning the source and scope of the constitutional right of autonomy. For a good discussion of the determinants of the right of autonomy, *see* Stanford Note, *supra*, at 1173–1189.

█ It is not necessary for the Court to enter this debate because the conduct that is the subject of disclosure in this case so clearly does not implicate plaintiff's interest in autonomy. The decision of an individual to provide the government with information about a crime is not within the "cluster of constitutionally protected choices" that includes "the most private and sensitive" decisions in "a field that by definition concerns the most intimate of human activities and relationships * * *."[5] *Carey v. Population Services International, supra,*

431 U.S. at 685, 97 S.Ct. at 2017. The activity that would be affected by public disclosure of plaintiff's role as an informant is communication with government officials in their official capacities. The right of autonomy means the right to prevent governmental interference with private decisions and relationships, and it is impossible to exclude the government from an activity, like informing, which necessarily involves it. The right of autonomy does not encompass the right to provide information to government officials about criminal activity.

█ The Court does not decide whether the Government's unnecessary disclosure of plaintiff's role in the *Lamkin* case without his consent would violate his possible constitutional rights as an informant. Some language in *In re Quarles*, 158 U.S. 532, 536, 15 S.Ct. 959, 961, 39 L.Ed. 1080 (1895), suggests that informants may have a constitutional right to government protection, a right which could possibly require the preservation of their anonymity in some circumstances:

> "The right of a citizen informing of a violation of law, like the right of a prisoner in custody upon a charge of such violation, to be protected against lawless violence, does not depend upon any of the Amendments to the Constitution, but arises out of the creation and establishment by the Constitution itself of a national government, paramount and supreme within its sphere of action."

4. *York v. Story*, 324 F.2d 450 (9 Cir. 1963), *cert. denied*, 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659 (1964), does not require a different result. In *York,* the police allegedly induced a complainant to undress and to assume indecent positions and then circulated photographs of her around the police department. Unable to "conceive of a more basic subject of privacy than the naked body," 324 F.2d at 455, the Court of Appeals found that these allegations made out a violation of the right of privacy secured by the Fourteenth Amendment. That court refused to extend *York* in *Baker v. Howard*, 419 F.2d 376 (9 Cir. 1969) (per curiam by a panel including the author of *York*), where the plaintiff alleged that the police disseminated false information about his criminal activity which the police knew to be false. The court

did not find this an invasion of privacy "so flagrant that it calls for invocation of the Constitution." 419 F.2d at 377. The information which DEA agents allegedly threatened to reveal is more analogous to the information in *Baker* than that in *York,* and its dissemination shocks the conscience no more than public release of the information in *Baker. Baker* supports the Court's conclusion here.

5. It is also noted that acting as an informant has absolutely nothing in common with "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education." *See Paul v. Davis, supra,* 424 U.S. at 713, 96 S.Ct. at 1166.

Although no modern Supreme Court case has hinted that the original articles of the Constitution, as well as the Bill of Rights, are surrounded by a penumbra (much less one that extends to informants), some recent cases have extended constitutional protection to informants. *United States v. Guillette*, 547 F.2d 743, 748 (2 Cir. 1976) (right to be witness secured by Constitution for purposes of 18 U.S.C. § 241 prosecution); *United States v. Pacelli*, 491 F.2d 1108, 1113 (2 Cir.) (same), *cert. denied*, 419 U.S. 826, 95 S.Ct. 43, 42 L.Ed.2d 49 (1974); *see Swaaley v. United States*, 376 F.2d 857, 862, 180 Ct.Cl. 1 (1967) (First Amendment source of informers' right discussed in context of discharge of federal employee for informing on superior). However, a claim based on the constitutional rights of informants is very different from a claim based on any constitutional right of privacy, and because plaintiff has raised only the latter, the former is not properly before the Court.

■ Because plaintiff's constitutional right of privacy has not been violated, the Court need not decide whether it could properly infer a damage remedy against the agents from the Constitution. *Cf. Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, supra*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (implied constitutional rights of action for damages).

**B.** *Claims Against the United States*

1. *United States Constitution*

■ Plaintiff has no constitutional claim against the United States because no constitutional privacy right of plaintiff has been violated. Even if the agents had violated some constitutional privacy right of plaintiff, the Court could not infer a damage remedy from the Constitution itself because of the sovereign immunity of the federal government. *Jacobson v. Tahoe Regional Planning Agency*, 558 F.2d 928, 940 (9 Cir. 1977). An individual cannot recover from the United States in the absence of congressional consent "even in cases grounded upon alleged violations by the Government of Federal Constitutional rights. *Schillinger v. United States*, 1894,

155 U.S. 163." *Laycock v. United States*, 230 F.2d 848, 850 (9 Cir. 1956); *Monarch Insurance Co. of Ohio v. District of Columbia*, 353 F.Supp. 1249, 1253–1254 (D.D.C. 1973), *aff'd*, 162 U.S.App.D.C. 97, 497 F.2d 684, *cert. denied*, 419 U.S. 1021, 95 S.Ct. 497, 42 L.Ed.2d 295 (1974). As Justice Harlan said in his concurring opinion in *Bivens v. Six Unknown Named Agents, supra*, 403 U.S. at 410, 91 S.Ct. at 2012, "However desirable a direct remedy against the Government may be as a substitute for individual official liability, the sovereign still remains immune to suit."

2. *The FTCA*

Plaintiff claims that the United States is liable for its officers' intentional infliction of emotional distress by jeopardizing his privacy.

■ Under § 2674, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances * * *." The United States can be liable for the tort of intentional infliction of emotional distress. It is not one of the intentional torts explicitly exempted by 28 U.S.C. § 2680(h) from the general rule of liability, and the Court must assume in the absence of contrary legislative intent that the lists of exceptions in § 2680(h) is comprehensive. *Black v. Sheraton Corp. of America*, 564 F.2d 531, 539 & n.3 (D.C.Cir.1977); *Avery v. United States*, 434 F.Supp. 937, 945–946 (D.Conn.1977) (FTCA liability for invasion of privacy); *see* Boger, Gitenstein & Verkuil, The Federal Tort Claims Act Intentional Torts Amendment: An Interpretative Analysis, 54 U.N.C.L.Rev. 497, 519 (1976) (same). Inclusion of this intentional tort in the law enforcement proviso of § 2680(h) is therefore not necessary to create sovereign liability for this tort.

■ DEA did not, according to plaintiff's allegations, ever invade his right of privacy. Its agents never in fact made public his involvement in the investigation and prosecution of Lamkin. Plaintiff alleges that the agents threatened to disclose

unnecessarily his involvement and that they, together with the United States Attorney's office, negligently or intentionally engaged in a course of conduct that would have led to that disclosure but for the intervention of plaintiff's attorney to have plaintiff testify *in camera.* Plaintiff also alleges that he suffered emotional distress as a result of this conduct. The Court must therefore decide whether an individual can recover damages under California law for emotional distress caused by a threatened or imminent invasion of privacy that never actually occurred.[6]

■ California law recognizes the tort of intentional infliction of emotional distress. *Alcorn v. Anbro Engineering, Inc.,* 2 Cal.3d 493, 86 Cal.Rptr. 88, 90, 468 P.2d 216 (1970); *State Rubbish Collectors Ass'n. v. Siliznoff,* 38 Cal.2d 330, 336–339, 240 P.2d 282, 284–286 (1952); *Cornblith v. First Maintenance Supply Co.,* 268 Cal.App.2d 564, 74 Cal.Rptr. 216 (1968); *Leavy v. Cooney,* 214 Cal.App.2d 496, 29 Cal.Rptr. 580 (1963); *Perati v. Atkinson,* 213 Cal.App.2d 472, 28 Cal.Rptr. 898 (1963). The elements of a prima facie case for that tort are "(1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Fletcher v. Western National Life Ins. Co.,* 10 Cal. App.3d 376, 89 Cal.Rptr. 78, 88 (1970). In addition, "[w]hether treated as an element of a prima facie case or as a matter of defense, it must also appear that the defendants' conduct was unprivileged." *Id.,* 89 Cal.Rptr. at 88. All elements are present here.

■ (1) Plaintiff's allegations could reasonably "lead the trier of fact to conclude that defendants' conduct was extreme and outrageous, having a severe and traumatic effect upon plaintiff's emotional tranquility." *Alcorn v. Anbro Engineering, Inc., supra,* 86 Cal.Rptr. at 90, 468 P.2d at 218.

The agents' alleged threat to "burn" plaintiff in court could reasonably be construed as a threat to disclose unnecessarily his identity through the issuance of a subpoena requiring public testimony and then to leave him without police protection against a real possibility of retaliation by Lamkin or his associates. That threat could reasonably be considered outrageous. It would violate both DEA policy against the unnecessary disclosure of the identity of confidential informants, Siegel Deposition, at 5, and the general policy of law enforcement agencies and courts to protect the anonymity of informants in order to minimize their danger and encourage future cooperation, *see* p. 8, *supra.* Furthermore, unwarranted disclosure of plaintiff's identity would invade his privacy interests protected by the Federal Privacy Act of 1974, which prohibits the disclosure of information in federal governmental files under these circumstances.[7]

**6.** Because all the allegedly wrongful acts and omissions that caused injury to plaintiff occurred in California, his claim is governed by the substantive tort law of California. 28 U.S.C. § 1346(b); *United States v. Muniz,* 374 U.S. 150, 153, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963); *Hess v. United States,* 361 U.S. 314, 318, 80 S.Ct. 341, 4 L.Ed.2d 305 (1960); *Standefer v. United States,* 511 F.2d 101, 104 & n.4 (5 Cir. 1975).

**7.** Section 552a(b) of Title 5 of the United States Code provides:

"No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains * * *."

Neither of these two exceptions is applicable in this case, and none of the other eleven exceptions to § 552a(b) covers unnecessary disclosure of a confidential informant's identity without a court order. Although the date of enactment and the effective date of § 552a(b) came after the agents allegedly threatened to disclose plaintiff's identity, the Federal Privacy Act of 1974 may incorporate a policy that predated its enactment even though it was not directly enforceable, *see* 5 U.S.C. § 552a(g) (civil remedies for improper disclosure), until that time. *See* Project, Government Information and the Rights of Citizens, 73 Mich.L.Rev. 971, 1324 & n.2113 (1975).

The outrageousness of the agents' alleged conduct is compounded by the abuse of their official authority because one relevant factor in determining whether the defendant's conduct is outrageous is the defendant's "position or relation of authority over plaintiff," *Alcorn v. Anbro Engineering, Inc., supra,* 86 Cal.Rptr. at 90 & n.2, 468 P.2d at 218. *See, e. g., City of Deland v. Florida Transportation & Leasing Corp.,* 293 So.2d 800 (Fla.App.1974) (McCord, J., concurring specially) (police officer coerced plaintiff under threat of arrest because friend complained about plaintiff's legal repossession of his car); *Savage v. Boies,* 77 Ariz. 355, 272 P.2d 349 (1954) (police told plaintiff her husband and child were seriously injured in order to get her to hospital for court-ordered psychiatric commitment); cf. *Johnson v. Sampson,* 167 Minn. 203, 208 N.W. 814 (1926) (school officials falsely accused student of wrongdoing and threatened loss of liberty).

■ The agents allegedly threatened disclosure of plaintiff's identity to make him sign a statement. The Court's conclusion about the outrageousness of their alleged conduct remains sound even if plaintiff had a duty to sign the statement. No more than a valid commitment order could justify the defendants' conduct in *Savage v. Boies, supra,* 272 P.2d 349, and no more than the validity of the friend's grievance against the plaintiff could justify the defendant's conduct in *City of Deland v. Florida Transportation & Leasing Corp., supra,* 293 So.2d 800, can plaintiff's refusal to perform a legal duty justify the agents' conduct here. The tort of intentional infliction of emotional distress is intended to provide redress against an individual's use of wrongful means as much as against his pursuit of wrongful ends. *Cf. United States v. von der Linden,* 561 F.2d 1340, 1341 (9 Cir. 1977) (truth of allegations underlying threat is not generally defense to extortion charge).

Plaintiff has therefore made out a claim that defendants' conduct in inflicting emotional distress was outrageous. The Court recognizes that law enforcement officers require broad discretion in dealing with informants who are often unscrupulous and unreliable. But the Court cannot say as a matter of law that the conduct alleged by plaintiff did not exceed these limits. " 'Where reasonable men may differ, it is for the [trier of fact] to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.' " *Alcorn v. Anbro Engineering, Inc., supra,* 86 Cal.Rptr. at 91, 468 P.2d at 219. Because plaintiff "has pleaded a situation in which reasonable men may differ regarding defendant's liability," dismissal of this claim for failure to allege sufficiently outrageous conduct by the agents would be in error. *Id.,* at 91, 468 P.2d at 219.

■ (2) The trier of fact could infer that the agents intended to inflict emotional distress on plaintiff by threatening to reveal his identity. Such a threat is calculated to cause anxiety, and its success depends on the informer's fear of disclosure.

■ (3) The severity of plaintiff's emotional distress is basically a question of fact for the trier of fact to determine. *Fletcher v. Western National Life Ins. Co., supra,* 89 Cal.Rptr. at 90. Distress is severe if it is "substantial and enduring as distinguished from trivial or transitory." *Ibid.* During the winter and spring of 1976, plaintiff's alleged level of anxiety concerning the risk of disclosure was high, and even the portion proximately caused by the agents' misconduct (see next paragraph) could reasonably be considered severe.

■ (4) The fourth element of a claim for intentional infliction of emotional distress is that defendants' conduct was the proximate cause of plaintiff's distress. Some of plaintiff's anxiety about his role as informer was clearly not attributable to the agents' alleged misconduct. Even if the agents always told plaintiff that he might have to testify in open court and if they assured him that they would protect him from Lamkin and his associates if plaintiff's identity had to be revealed, plaintiff would still have suffered substantial guilt, anxi-

ety, and fear, which often accompany the performance of the duty to inform the Government of criminal activity. The trier of fact could reasonably conclude, however, that the alleged misconduct significantly increased plaintiff's anxiety. If it did so find, the United States would be liable for only that incremental increase in emotional distress caused by the agents' misconduct. Because a significant portion of plaintiff's emotional distress could reasonably be found to be caused by defendants' conduct, plaintiff's allegations adequately make out this fourth element.[8]

Finally, assuming that this issue is an element of a prima facie case rather than an affirmative defense, there remains the question whether the agents' misconduct was privileged. The United States' liability is at least as broad as its agents', and a law enforcement officer is immunized from liability for wrongful conduct "only if (1) at the time and in light of all the circumstances there existed reasonable grounds for the belief that the action was appropriate *and* (2) the officer acted in good faith." *Mark v. Groff*, 521 F.2d 1376, 1379–1380 (9 Cir. 1975) (emphasis in original); *Midwest Growers Cooperative Corp. v. Kirkemo*, 533 F.2d 455, 463 (9 Cir. 1976); see *Scheuer v. Rhodes*, 416 U.S. 232, 247–248, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Plaintiff's allegations certainly permit the reasonable inference that the agents' actions satisfied neither prong of this test, and their alleged conduct was therefore not privileged. The United States does not argue that threats against informants like those alleged here are in fact within the scope of DEA officers' duties.

There is another independent legal theory upon which plaintiff may be entitled to relief. In *Swanner v. United States*, 275 F.Supp. 1007, 1010–1011 (M.D.Ala.1967), *rev'd on other grounds*, 406 F.2d 716 (5 Cir. 1969), *on remand*, 309 F.Supp. 1183 (1970), the United States was held liable under the FTCA for its negligent failure to provide

police protection to a confidential informant whom the Government had reasonable cause to believe was endangered as a result of his informing. The basis for this "common-law remedy," *id.*, 275 F.Supp. at 1012, is the special relationship between the Government and citizens who perform their duty to inform the Government of criminal activity. As the New York Court of Appeals said in *Schuster v. City of New York*, 5 N.Y.2d 75, 18 N.Y.S.2d 265, 270, 154 N.E.2d 534, 537 (1958),

> "where persons actually have aided in the apprehension or prosecution of enemies of society under the criminal law, a reciprocal duty arises on the part of society to use reasonable care for their police protection, at least where reasonably demanded or sought."

See *In re Quarles, supra*, 158 U.S. at 535–536, 15 S.Ct. 959; *Williams v. Allen*, 439 F.2d 1398, 1399–1400 (5 Cir. 1971).

The agents' alleged threat to breach this duty to protect plaintiff as an informant would constitute outrageous conduct entitling him to relief for intentionally inflicted emotional distress. The threat not to protect plaintiff against probable danger was implicit in the alleged threat to "burn" him by having him testify publicly. A threat to commit intentionally this tortious breach of the duty to protect informants is at least as outrageous as a threat to reveal an informant's identity. If the duty to protect informants is conceived as part of a more general duty to minimize the danger and anxiety of informants as much as is reasonably possible, the agents not only threatened but in fact committed a breach of their duty to plaintiff.

The Court concludes that plaintiff's allegations make out a claim under California law for intentional infliction of emotional distress upon which relief may be granted. In view of the substantial difference between plaintiff's account of his dealings with DEA and that of the agents, summary judgment is inappropriate, and

---

8. Any attempt to quantify the portion of plaintiff's emotional distress caused by the agents' alleged misconduct as distinguished from that portion inherent in the informer's role may be speculative, but the Court does not decide this question here.

the issues of material fact must be resolved at trial.

## II. *STATE CAUSES OF ACTION*

The parties vigorously dispute whether a state claim against individual agents can be joined to a claim against the United States under the FTCA. Jurisdiction over this pendent claim appears to be foreclosed by a series of decisions of the Court of Appeals for the Ninth Circuit. In the most recent of that series, *Ayala v. United States*, 550 F.2d 1196 (9 Cir. 1977), *cert. granted*, —— U.S. ——, 98 S.Ct. 50, 54 L.Ed.2d 70 (1977), the Court of Appeals held that a plaintiff cannot join another party to a suit against the United States under the FTCA unless an independent federal jurisdictional basis for the action against the other party is present. Since plaintiff has no implied right of action for damages against the agents under the Constitution (see Part I–A–2), there is no independent jurisdictional basis for his suit against them, and joining the state cause of action would therefore require adding a new party under the Court's pendent jurisdiction.

▉ It is not necessary to decide whether pendent party jurisdiction is proper here. Even if the Court had pendent jurisdiction of the state claim, it is clearly barred by the statute of limitations. Plaintiff concedes that the applicable state statute of limitations for intentional tort suits, Cal.Code Civ. Proc. § 340, is one year, and that this lawsuit was filed more than one year after the alleged tort occurred. Plaintiff argues that the action is not barred by the statute of limitations because the statute was tolled by the pendency of plaintiff's administrative claim against the United States which under 28 U.S.C. § 2675(a) is a prerequisite to suits against the United States. Under California law, the statute of limitations is tolled " 'during any period in which the plaintiff is legally prevented from taking action to protect his rights.' " *County of Santa Clara v. Hayes Co.*, 43 Cal.2d 615, 275 P.2d 456, 458 (1954). That exception is not relevant. The requirement of § 2675(a) does not apply to actions against a federal official, as distinguished from actions against the United States, *Turner v. Ralston*, 409 F.Supp. 1260, 1262 (W.D.Wis. 1976), so plaintiff's administrative remedies against the United States simply were not an "administrative proceeding forming a necessary prelude to a lawsuit" against the agents. *See A. Teichert & Son, Inc. v. State*, 238 Cal.App.2d 736, 48 Cal.Rptr. 225, 232 (1965).

Plaintiff argues that he "is effectively barred from bringing an action against the government employees as individuals until he has brought an action against the United States" because § 2676 makes a judgment against the United States a bar to any action against the employees. Plaintiff's Memorandum of Points and Authorities of April 12, 1977, at 19. Since there has been no judgment against the United States, § 2676 is irrelevant.

Accordingly, IT IS HEREBY ORDERED that defendants' motion to dismiss the claims against the individual agents is granted.

IT IS HEREBY FURTHER ORDERED that defendants' motion to dismiss the claim against the United States arising under the federal Constitution is granted.

IT IS HEREBY FURTHER ORDERED that defendants' motion to dismiss or, in the alternative, for summary judgment on the claims against the United States based on the Federal Tort Claims Act, 28 U.S.C. §§ 2674–2680, is denied.

IT IS HEREBY FURTHER ORDERED that a status conference will be held in this matter at 9 A.M. on Thursday, December 22, 1977.

## ON MOTION FOR RECONSIDERATION

In a motion filed on December 15, 1977, defendant asked the Court to reconsider its decision of December 5, 1977, denying defendant's motions to dismiss and for summary judgment. Defendant argues that agents of the Drug Enforcement Administration ("DEA") have absolute immunity from liability for acts performed in the course of their official duties, and defend-

ant apparently assumes that in suits under the Federal Tort Claims Act ("FTCA"), the United States can raise any defense that its agents can raise when sued in their individual capacities. Based on the papers submitted by counsel and on oral argument on January 18, 1978, the Court denies the motion.

■ The premise of defendant's argument, the contention that police officers are entitled to absolute immunity under common law principles, is wrong. In *Pierson v. Ray*, 386 U.S. 547, 556–557, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), the Supreme Court limited the immunity of police officers in false arrest cases under 42 U.S.C. § 1983 to situations where they acted in good faith and on reasonable grounds. *Imbler v. Pachtman*, 424 U.S. 409, 418–419, 430–431 & nn. 31 & 33, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (immunity of prosecutors under § 1983), suggested the continuing validity of that doctrine, and the Supreme Court stressed that the type of immunity accorded a member of the executive branch depends "upon a considered inquiry into the immunity historically accorded the relevant official at common law and the interest behind it." 424 U.S. at 421, 96 S.Ct. at 990. Defendant has identified no common-law or California authority that police have absolute immunity.

Defendant's reliance on *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) (plurality opinion), is misplaced. *Barr* gave absolute immunity to the defendant in that case not because he was a member of the executive branch but because he was a member of the executive level of the executive branch with a broad range of responsibility. 360 U.S. at 572–573, 79 S.Ct. 1335. Police officers unquestionably must exercise discretion in dealing with informants, but the breadth of their discretion is not sufficient to confer on them absolute immunity. *See Scheuer v. Rhodes*, 416 U.S. 232, 245–246, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Defendant is correct that the Supreme Court seems to have applied different principles in tort cases than in constitutional cases, *compare Barr v. Matteo, supra*, with *Scheuer v. Rhodes, supra*, 416 U.S. at

247–248, 94 S.Ct. 1683; *see generally* Note, Federal Executive Immunity from Civil Liability in Damages, A Reevaluation of *Barr v. Matteo*, 77 Colum.L.Rev. 625 (1977), but the principle that police officers have only qualified immunity applies "whether the action is a common-law tort suit, a § 1983 civil rights suit, or a *Bivens*-type constitutional suit." *Butler v. United States*, 365 F.Supp. 1035, 1045 (D.Hawaii 1973). The court therefore adheres to its ruling that police officers have only a qualified immunity.

■ Even if DEA agents do have absolute immunity, the United States is not entitled to raise the immunity defenses (whether absolute or qualified) of its employees in suits under the FTCA. *See Norton v. Turner*, 427 F.Supp. 138, 146–152 (E.D.Va.1977) (no immunity defense for constitutional torts of police officers). Under the FTCA, the United States is liable not to the same extent as a governmental employee but rather "to the same extent as a *private* individual under like circumstances." 28 U.S.C. § 2674 (emphasis added). Section 2680 of the FTCA, which creates some limited exceptions to the general rule of liability in § 2674, does not exempt the United States from liability in cases where its employees would be immune from individual liability, and those exemptions are exhaustive. *Rayonier Inc. v. United States*, 352 U.S. 315, 329 & n.3, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957). Section 2680(a), which exempts the federal government from liability for discretionary acts of its employees, overlaps the immunity doctrine at least to the extent that both involve "the capacity of a court to evaluate the propriety of the official's action" and "the effect of liability on the effective administration of the function in question," *Driscoll v. United States*, 525 F.2d 136, 138 (9 Cir. 1975), and defendant does not claim that the dealings of DEA agents with informants is a "discretionary function or duty" within the meaning of § 2680(a). *See Downs v. United States*, 522 F.2d 990, 997–998 (6 Cir. 1975) (law enforcement functions generally not discretionary). Furthermore, governmental (as distinguished from personal) liability

does not deter governmental employees enough from the vigorous performance of their duties to justify the loss of a damage remedy for victims of their wrongful acts. *See Downs v. United States, supra,* 522 F.2d at 998 & n.9; *Johnson v. State,* 69 Cal.2d 782, 73 Cal.Rptr. 240, 246–248, 447 P.2d 352 (1968). *See generally* James, Tort Liability of Governmental Units and Their Officers, 22 U.Chi.L.Rev. 610, 650–654 (1955); Note, The Discretionary Function Exception of the Federal Tort Claims Act, 66 Harv.L. Rev. 488, 495–496 (1953).

Accordingly, IT IS HEREBY ORDERED that defendant's motion for reconsideration is denied.