Mary Elizabeth BLANTON and Earl Alexander Blanton, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 76–0775.

United States District Court, District of Columbia.

Feb. 4, 1977.

Frederic R. Kellogg, Washington, D. C., for plaintiff.

Robert M. Werdig, Jr., Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM OPINION AND ORDER

GESELL, District Judge.

This complaint, brought under the Federal Tort Claims Act, 28 U.S.C. § 1346, *et seq.*, alleges negligence based on medical malpractice occurring in a Navy Regional Medical Center at Oakland, California, where Mary Elizabeth Blanton, wife of a Coast Guard officer, was admitted for childbirth on March 6, 1973.

### I. FACTS

Mrs. Blanton's blood is Rh negative and her husband's blood is Rh positive. The child born on March 7 had Rh positive blood. The Blantons desired to have more than this one child. The Blantons and the attending physicians knew, however, that if Mrs. Blanton again became pregnant with an Rh positive fetus a reaction of great danger to the fetus and the mother might occur, perhaps causing a stillbirth or the birth of a defective child. This reaction can be completely avoided in 99 percent of the cases by administering a passive anti-D antibody of proper strength almost immediately after birth. There were at the time at least two proprietary names for such a drug, Rho-Gam and Hyp-Rho-D. Mrs. Blanton having given birth successfully to a child by her prior marriage had received Rho-Gam, knew it was effective in her case, and took special precautions to advise the doctors and staff of her special situation and her desire to receive Rho-Gam. When the time came she was asked whether she would be willing to take Hyp-Rho-D instead as part of an experiment then being conducted at the hospital in conjunction with Cutter Laboratories, Inc., the manufacturer, to determine whether Hyp-Rho-D had effectiveness beyond its FDA-approved shelf life. Mrs. Blanton refused to participate in the experiment, insisted on Rho-Gam, spoke to an attending physician, and her chart was marked for Rho-Gam. When she received her shot the nurse said "here is your Rho-Gam." In fact, Mrs. Blanton received a shot of outdated Hyp-Rho-D without her consent or knowledge as part of the experiment. While the medical staff

learned of the mistake by March 10, 1973, Mrs. Blanton was not advised until August, 1973.

Mrs. Blanton was immediately shocked and upset when she learned of the mistake and feared she could not have any more children. She broke into tears. Anxiety, depression and anger developed. The episode had a strong emotional impact causing physical symptoms such as nervousness, muscle pains, nausea, indigestion, loss of sleep and menstrual irregularities. She consulted private physicians, took various blood tests and she and her husband became amateur experts in fetal obstetrics related to the Rh factor. They read the scientific literature, consulted medical friends and sought some positive assurance that they could successfully produce another child without the hazards that would arise should the fetus be Rh positive.

A blood test taken at the hospital six months after the birth found a negative anti-D titer and thus showed no danger that the feared reaction would occur with a subsequent pregnancy. Medically this test at six months is considered the most predictive test of future pregnancies. While the results of the Hyp-Rho-D experiment are not fully known, all preliminary indications are favorable to using the drug for a longer shelf life period and the preponderance of the evidence established that Hyp-Rho-D was just as effective as Rho-Gam. The possibility of the feared reaction should a second fetus be Rh positive has for all practical purposes, within medical knowledge, been successfully treated.

## II. LIABILITY

. Given these facts the United States strenuously argues that no cause of action exists under the Federal Tort Claims Act. This Act provides at 28 U.S.C. § 2680(h) that there is no waiver of sovereign immunity for "any claim arising out of assault, battery . . . misrepresentation, deceit or interference with contract rights." It is

urged that the instant claim is either in misrepresentation or in battery and hence exempted from the Act's grant of jurisdiction to this Court.

■ In this case, Medical Center personnel had at least two duties to the patient: (1) the exercise of due care in the administration of the drug, and (2) the accurate description of the drug that was administered. The clear violation here of the duty of accurate description may be a misrepresentation or battery and thus not actionable under the Federal Tort Claims Act. *Ramirez v. United States*, Civil No. 74–532–E (S.D.Cal., Oct. 30, 1975); *Sawyer v. United States*, Civil No. 75–246–N (S.D.Cal., Oct. 30, 1975); *Rowell v. United States*, Civil No. 75–245–GT (S.D.Cal., Oct. 30, 1975). However, this need not be reached for the issue of whether due care was violated in the administration of Hyp-Rho-D rather than Rho-Gam would still remain. *Hungerford v. United States*, 307 F.2d 99 (9th Cir. 1962).

■ Mrs. Blanton was not simply given one drug that was inaccurately represented as another. The shelf life of the Hyp-Rho-D had been exceeded and the drug was of unknown effectiveness. It was, in effect, a "new drug" without FDA approval and must be presumed dangerous. *See* 21 U.S.C. § 355. It was administered despite the availability of a drug of known effectiveness and proven reliability. The hospital violated accepted medical standards and its duty of due care. Only had plaintiff consented to the experiment would the United States be immune from liability in tort.

■ This conclusion is reinforced by section 505(i) of the Food, Drug and Cosmetic Act, as amended, 21 U.S.C. § 355(i). While under the Tort Claims Act the standard of care is determined by state law, *Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962), federal law may impose its own duties and standards.* Section

* *Gill v. United States*, 429 F.2d 1072 (5th Cir. 1970).

505(i) allows experimentation on humans with non-FDA-approved drugs only with the consent of those to whom the drugs are administered. The duty to insure that there will be no experimentation without consent falls upon both the drug manufacturer and the sponsor of the experiment. This section was intended to protect patients from involuntary experimentation and creates a special duty of care. According to medical testimony this special duty to refrain from involuntary experimentation has been accepted nationwide by the medical profession. In this instance the duty was violated by the Medical Center and its personnel, and the United States is liable for the resulting injury.

## III. DAMAGES

■ The Court must make an award to Mrs. Blanton for her physical difficulties and related distress caused by the failure of hospital personnel to exercise due care. *Espinosa v. Beverly Hospital*, 114 Cal.App.2d 232, 249 P.2d 843 (1953); *Petition of the United States*, 418 F.2d 264 (1st Cir. 1969).

Mrs. Blanton is 32 years old. Since the United States had no physical examination made, her statements that she has muscle pains two or three times a week, nausea once or twice a month, frequent indigestion, difficulty sleeping every night, and menstrual irregularity must be accepted. Mrs. Blanton attributes these problems to the incident. While there is no medical testimony supporting this belief, her anger, nervousness and depression are genuine and the physical symptoms she suffers are in common experience related to these emotional reactions. There is no contrary evidence.

The record discloses that in 1976 Mrs. Blanton was forced to abort an unplanned pregnancy due to complications caused by a misplaced intrauterine device. This traumatic experience, in no way related to the Medical Center's negligence, is probably responsible for some of plaintiff's symptoms. In addition, her nervousness and related symptoms are diminishing. Thus, damages due must be discounted accordingly.

■ As plaintiffs concede, Mr. Blanton has suffered no adverse physical effects. Since negligently caused emotional disturbance alone is not sufficient to create a cause of action, Mr. Blanton's claim for damages must be dismissed. *See Petition of the United States, supra,* and cases cited therein. In addition, the malpractice complained of is not the proximate cause of Mr. Blanton's increased medical expenses resulting from the family's decision not to make further use of Government hospitals. Plaintiffs' decision to avoid Government medical facilities creates a different kind of harm than would otherwise result from malpractice and is a superseding cause of the financial injury. Restatement of Torts 2d, §§ 440–442.

■ The Court finds that Mrs. Blanton must be compensated by $15,000 for her injuries. No special medical expenses have been adequately proven. As to Mr. Blanton, judgment is for the defendant. Plaintiffs shall be awarded costs. The Clerk of Court to enter judgment accordingly.

The foregoing constitutes the Court's findings of fact and conclusions of law.

SO ORDERED.