Anthony LIUZZO, Jr., et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 79–72564.

United States District Court, E. D. Michigan S. D.

Feb. 25, 1981.

Jack D. Novik, American Civil Liberties Foundation, New York City, for plaintiffs.

L. Michael Wicks, Asst. U. S. Atty., Detroit, Mich., John J. Farley, Asst. Director, Mark J. Kurzmann, Trial Atty., U. S. Dept. of Justice, Torts Branch, Civil Division, Washington, D. C., for defendant.

MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This case is before the court on three motions: defendant's motion to dismiss; plaintiffs' motion to amend the complaint; and plaintiffs' motion to compel. In this suit, plaintiffs seek damages from the United States for the death of their mother, Viola Liuzzo, a civil rights worker who was murdered in 1965.

The facts of this case are reported in detail in an earlier opinion of this court, *Liuzzo v. United States*, 485 F.Supp. 1274 (E.D.Mich.1980). Plaintiffs allege that the government, through the Federal Bureau of Investigation, was responsible for their mother's death, and that certain agents mishandled and abused their mother's body after her death. These allegations are discussed in detail below.

Defendant's motion to dismiss is based on F.R.C.P. 12(b)(1) and (6), and asserts that the court lacks subject matter jurisdiction to entertain this action and that plaintiffs' complaint fails to state a claim on which relief can be granted. Following the hearing on the motion to dismiss, plaintiffs moved to amend their complaint. The court indicated to the parties at that time that both motions would be decided together, and that oral argument on the motion to amend would not be entertained. Finally, plaintiffs have moved to compel the production of the "Rowe Task Force Report" under F.R.C.P. 37. Production of the report has been resisted by defendant on the basis of privilege.

I. *Motion to Amend Complaint*

Turning first to the motion to amend the complaint, the court notes that the amended complaint does not differ substantially in legal theory from the complaint originally filed, and supplements factual allegations contained in the original complaint. Defendant opposes this motion, asserting that plaintiffs have delayed in presenting it to the court, and that defendant will be prejudiced if the court allows the amended complaint. Precisely how the government will be prejudiced, however, is not explained. Defendant further argues that the amended complaint should not be allowed because it cannot survive the motion to dismiss.

In view of the lack of demonstrated prejudice to defendant, the court believes that the amended complaint should be allowed. Defendant's arguments in support of its motion to dismiss are readily transferable to the amended complaint and are, in fact, reiterated by defendant in its brief opposing the motion to amend. Allowance of the amended complaint, moreover, is in furtherance of the liberal policy of Rule 15. Accordingly, plaintiffs' motion to amend is granted.

II. *Motion to Dismiss*

Plaintiffs seek damages in this case for the death of their mother in 1965. In March of that year, Viola Liuzzo traveled to Alabama to participate in the Selma-Montgomery voting rights march. While traveling between the two cities, her car was overtaken by a car occupied by members of the Ku Klux Klan. Shots were fired at Mrs. Liuzzo and she died of the injuries sustained. One of the occupants of the Klan car was Gary Thomas Rowe, an F.B.I. informant.

Plaintiffs allege that the F.B.I. recruited Rowe as an informant in the Klan, and that the F.B.I. exercised direct, continuous, and complete control over Rowe while he performed his duties as a Klan informant. They further allege that Rowe was paid for his services, and at all times acted within the scope of his authority under instruction and supervision given by the F.B.I. According to plaintiffs, the F.B.I. agents who recruited Rowe knew or should have known that he lacked the necessary stability and responsibility required by F.B.I. policy. It is further alleged that Rowe's control agents failed to provide the necessary training and supervision to insure that Rowe performed his duties lawfully and responsibly. Moreover, plaintiffs allege that Rowe's control agents knew of and negligently and wrongfully authorized Rowe to participate in and provoke violent and illegal acts. Plaintiffs further allege that Rowe's control agent wrongfully and negligently authorized Rowe to participate in the activities which culminated in Mrs. Liuzzo's death, regardless of the fact that the agent knew or should have known that violent and illegal acts would occur. Plaintiffs set forth six claims based on these allegations:

a. The negligent and wrongful acts of Rowe and Rowe's FBI control agents, acting in violation of FBI policy and state and federal law, caused the murder of Viola Liuzzo by the KKK, and said negligent and wrongful acts were the proximate cause of Viola Liuzzo's death and plaintiffs' injuries;

b. Rowe negligently and wrongfully failed to prevent the murder of Viola Liuzzo, in violation of FBI policy and state and federal law, and said acts or omissions were the proximate cause of Viola Liuzzo's death and plaintiffs' injuries;

c. Rowe's FBI control agents negligently and wrongfully recruited, trained and supervised Rowe in violation of FBI policy and state and federal law, and said negligent and wrongful acts or omissions were the proximate cause of Viola Liuzzo's murder and plaintiffs' injuries;

d. Rowe's FBI control agents negligently and wrongfully authorized Rowe to participate in illegal activities, in violation of FBI policy and state and federal law, and said acts or omissions were the proximate cause of Viola Liuzzo's death and plaintiffs' injuries;

e. Rowe's FBI control agents, having knowledge (i) that Rowe had a long history of provoking and participating in KKK violence and lawlessness, (ii) that such violence and lawlessness was reasonably likely to occur on March 25, 1965, (iii) that the reasonably likely consequences of such violence and lawlessness would be serious injuries inflicted on the victims thereof, and (iv) that the FBI could have prevented such injuries, negligently and wrongfully failed to prevent Viola Liuzzo's murder, in violation of FBI policy and state and federal law, and said negligent and wrongful acts or omissions were the proximate cause of Viola Liuzzo's death and plaintiff's injuries;

f. Subsequent to her death on March 25, 1965, FBI agent negligently and wrongfully mishandled and abused Viola Liuzzo's body and such acts caused injuries to plaintiffs, including emotional distress and mental anguish.

Amended Complaint, paragraph 18.

Plaintiffs have filed this suit against the United States pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2401(b), 2671 *et seq.* By enacting this legislation, Congress has waived sovereign immunity for certain types of actions. In its motion to dismiss, the government argues that plaintiffs' claims[1] are not actionable under the FTCA because Congress has not waived immunity for these types of actions, and that absent a waiver of sovereign immunity, the court lacks jurisdiction to entertain this suit. Additionally, the government argues that plaintiffs have failed to state a claim on which relief can be granted, and seeks dismissal under F.R.C.P. 12(b)(6). The court will first discuss the jurisdictional issues, and then assess whether the complaint states a claim for which relief can be granted.

### A. *Jurisdiction under the Federal Tort Claims Act*

Section 1346(b) of Title 28 provides:

Subject to the provisions of Chapter 171 of this title [28 U.S.C. §§ 2671 *et seq.*] the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

This section's waiver of sovereign immunity and provision for jurisdiction of actions against the United States does not apply to every type of claim. Section 2680 of Title 28 specifically excepts certain claims from the application of § 1346(b). The government relies on two of the exceptions to the waiver of sovereign immunity, the assault and battery exception and the discretionary function exception, § 2680(h) and (a) respectively.

#### 1. The Assault and Battery Exception

Subsection (h) of § 2680 provides for an exception to the general waiver of sovereign immunity in § 1346(b) for:

Any claim arising out of assault, battery ...: *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and § 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery

. . . . .

Defendant argues, based on this provision, that plaintiffs' claims arise out of the assault and battery of Mrs. Liuzzo and are thus barred. According to defendant, artful, skilled, and innovative pleading cannot alter the character of this case from one "arising out of" an assault and battery to one sounding in negligence. Moreover, defendant argues that the proviso to subsection (h) does not apply to plaintiffs' claims because Rowe was not an "investigative or law enforcement officer" within the meaning of the proviso.

At the outset, it is clear that, to the extent that the assault and battery exception to the general waiver of sovereign immunity applies to plaintiffs' claims in this case, plaintiffs derive no benefit from the proviso to subsection (h) which operates to allow claims for certain intentional torts of certain investigative or law enforcement officers. That proviso, added to the FTCA in 1974, by its terms applies to claims which arise[2] on or after the date of the enactment

---

1. Defendant's motion to dismiss is made in general terms, and does not seek to apply each of the asserted grounds against each of plaintiffs' six claims. The arguments advanced in support of the motion have no bearing on the claim regarding the abuse of Mrs. Liuzzo's body after her death. Amended Complaint,

paragraph 18(f). The court will therefore treat this motion as being directed only against the first five claims found in paragraph 18(a) through (e) of the Amended Complaint.

2. Although defendant makes a concession to the contrary, when a claim "arises" for purposes of the proviso to 28 U.S.C. § 2680(h)

of the proviso. That the proviso applies to only those torts committed after that date is indicated by the legislative history:

> The effect of this provision is to deprive the Federal Government of the defense of sovereign immunity in cases in which Federal law enforcement agents, acting within the scope of their employment, or under color of Federal law, commit any of the [enumerated] torts ... *Thus, after the date of enactment of this measure, innocent individuals ... will have a cause of action against ... the Federal Government.* S.Rep.No.93–588, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Adm.News 2789, 2791. (emphasis added.)

This construction has been adopted by a number of courts. *Ames v. United States,* 600 F.2d 183 (8th Cir. 1979); *Gaudet v. United States,* 517 F.2d 1034 (5th Cir. 1975); *Pennington v. United States,* 406 F.Supp. 850 (E.D.N.Y.1976); *Dupree v. Village of Hempstead,* 401 F.Supp. 1398 (E.D.N.Y. 1975).

▮▮▮ The conduct for which plaintiffs seek to hold the government liable occurred well before the date on which the proviso to subsection (h) was enacted. It follows from this that the government cannot, under § 2680(h), be vicariously liable for any assault or battery committed by a government employee in this case.

The causes of action asserted by plaintiffs can be read to assert the vicarious liability of the government for the murder of their mother. To the extent they can be so read, these claims are barred. However, the allegations in the amended complaint go far beyond this narrow theory of liability, and assert that the government is *directly* liable for Mrs. Liuzzo's death by its negligent and wrongful conduct. These allegations include negligent and wrongful hiring, training and supervision of Rowe, negligent and wrongful failure to prevent the murder, and F.B.I. agents' negligent· and wrongful authorization to Rowe to commit illegal acts. The question presented by these claims is whether they are barred by § 2680(h). As the discussion below demonstrates, this question must be answered in the negative.

As noted above, § 1346(b) provides a general waiver of sovereign immunity for claims for injuries "caused by the negligent or wrongful act or omission of any employee of the Government ..." In this respect, it is essential to note that the negligent and wrongful acts and omissions alleged by plaintiffs are those of the agents who hired, trained, and supervised Rowe, authorized him to engage in violent and illegal activities, and failed to prevent the murder. Likewise, plaintiffs allege that Rowe wrongfully and negligently failed to prevent the murder.[3] Thus, the conduct of which plaintiffs complain was not the commission of the murder itself, but, rather, actions and omissions which, in a sense, made the murder possible and which thus were a proximate cause of the murder.

Section 2680(h), however, bars claims "arising out of" assault and battery. As noted above, however, plaintiffs' claims arise out of conduct which was not the commission of the murder itself. "When injuries directly resulting from assaults and batteries may be reasonably alleged to have

---

bears no relationship to when a claim "accrues" under the FTCA statute of limitations, 28 U.S.C. § 2401(b). The considerations and factors relevant to the accrual of a claim, and thus when a plaintiff must file his claim, do not affect whether or when Congress might decide to waive sovereign immunity for a claim. While due diligence is required in pressing a recoverable claim, Congress is certainly free to set an effective date for the waiver of sovereign immunity in this type of situation, and no amount of diligence on plaintiffs' part can alter the fact that the wrong occurred prior to the date that immunity was waived.

**3.** Obviously, the government can be liable for Rowe's failure to act only if Rowe was an employee of the government and owed a duty to Mrs. Liuzzo to prevent the killing. The question of duty is discussed at pp. 935–936, *infra.* Because of the resolution reached on the proper scope of § 2680(h), the court finds it unnecessary to resolve at this time whether Rowe was, under the law, an "employee" of the United States. Moreover, such a determination cannot be made on the record presently before the court, as there are material factual questions to be resolved with respect to this issue.

their roots in negligence, however, the courts have refused to dismiss them under section 2680(h)." *Bryson v. United States,* 463 ·F.Supp. 908, 912 (E.D.Pa.1978). Thus, the mere fact that the injury suffered is *directly* attributable to an assault or battery does not automatically bar a suit against the government. *Panella v. United States,* 216 F.2d 622 (2d Cir. 1954); *Gibson v. United States,* 457 F.2d 1391 (3d Cir. 1972); *Rogers v. United States,* 397 F.2d 12 (4th Cir. 1968); *Gale v. United States,* 491 F.Supp. 574 (D.S.C.1980); *Loritts v. United States,* 489 F.Supp. 1030 (D.Mass.1980).

It is worthy of emphasis that plaintiffs are not attempting to characterize the actual battery in this case as one negligently committed. Such an attempt would not succeed, as the cases clearly indicate. *Lambertson v. United States,* 528 F.2d 441 (2d Cir. 1976), *cert. den.* 426 U.S. 921, 96 S.Ct. 2627, 49 L.Ed.2d 374 (1976); *Klein v. United States,* 268 F.2d 63 (4th Cir. 1959); *Smith v. United States,* 330 F.Supp. 867 (E.D.Mich. 1971); *Nichols v. United States,* 236 F.Supp. 260 (N.D.Miss.1964). Rather, the conduct alleged to have been negligently or wrongfully committed is conduct apart from the murder but which is alleged to have proximately caused the murder.

Nonetheless, the issue is not so. easily resolved. A number of cases have held that the waiver of sovereign immunity does not apply when a party seeks to hold the government directly liable for the negligence of its employees, which negligence is in turn alleged to be a proximate cause of an assault or battery committed *by another government employee. Naisbitt v. United States,* 611 F.2d 1350 (10th Cir. 1980); *Pennington v. United States,* 406 F.Supp. 850 (E.D.N.Y.1976); *Collins v. United States,* 259 F.Supp. 363 (E.D.Pa.1966). If this line of cases were followed, the question whether the court has jurisdiction to entertain this suit would be answered differently, depending on whether a Klansman killed Mrs. Liuzzo or Gary Rowe, alleged to be a government employee, killed Mrs. Liuzzo.

The leading case setting forth the distinction between assaults committed by employees and third persons is *Panella v. United States,* 216 F.2d 622 (2d Cir. 1954). There the court held that a federal inmate's tort action for injuries sustained from an assault by another inmate, but allegedly caused by the negligence of employees of the government, was not barred by § 2680(h). In reaching this conclusion the court distinguished situations in which an assault is committed by a government employee:

It is true that Section 2680(h), retaining immunity against claims arising out of assault and battery, can literally be read to apply to assaults committed by persons other than government employees. But we think such a construction is out of keeping with the rest of the act. For in the present case the only basis of liability against the Government is the negligence of its employees, not their deliberate torts, since the assailant was not a Government employee. Unless it can be shown that government employees were negligent in maintaining the internal security of the Hospital, no liability could be imposed under the Tort Claims Act for the alleged assault, even if § 2680(h) did not exist, and the Government had thus waived immunity for claims arising out of assault. It is therefore important to distinguish cases in which it was sought to hold the Government liable on a negligence theory for assaults committed by *government employees* .... In this case, however, a negligence action is not merely an alternative form of remedy for assault but negligence is rather the essence of the plaintiff's claim. *Id.* at 624. (Citations omitted; emphasis in original.)

In this case, the essence of plaintiffs' claims is the alleged negligence and wrongdoing of government employees which led up to Mrs. Liuzzo's death. The "essence" of their claims does not change merely because the assault may have been committed by a government employee.[4] The availability,

4. See note 3, *supra.*

absent § 2680(h), of another theory of recovery does not change the character of plaintiffs' claims. Thus, the distinction drawn by *Panella* is unpersuasive. Unless some other reason exists for treating negligence claims against the government differently depending on who committed the assault, this court is compelled to hold that the identity of the intentional tort-feasor in this case is irrelevant under § 2680(h).

The court in *Panella* reviewed at length the "meagre" legislative history relating to the assault and battery exception. *Id.* at 625–26. Such history as there is does not compel the conclusion that Congress intended to bar negligence suits of the type filed by plaintiffs here. While there are indications that intentional torts by government employees should not be actionable, a reasonable inference to draw from the legislative history is that Congress was concerned with vicarious liability for these intentional torts, and not direct liability for negligent and wrongful conduct. For example, § 2680(h) was described as barring claims for certain intentional torts which would be "difficult to make a defense against, and which are easily exaggerated." *Id.* at 626, citing Hearings on S. 2690, 76th Cong., 3d Sess., p. 39. It is not evident to this court how a negligence action such as the one before it is any more difficult to defend against than any other negligence action in which it is alleged that certain duties were owed to the plaintiff and that these duties were breached. Nor is it evident how such claims can be more easily exaggerated than claims in any other negligence action.

The *Panella* court cautioned that the Federal Tort Claims Act should be read so as to make it "consistent and equitable." *Id.* at 624. However, the result that *Panella* directs the court to reach in this case, if the facts proved at trial result in a finding that a government employee fired the fatal shot, would be neither consistent nor equitable. Indeed, other courts have applied *Panella* to virtually identical fact situations and have reached opposite conclusions regarding the proper scope of § 2680(h). Compare *Pennington v. United States, supra,* and *Naisbitt v. United States, supra,* with *Gale v. United States, supra.*

Because the conduct on which governmental liability is premised here is not the intentional tort which caused Mrs. Liuzzo's death, but rather is conduct which allegedly made her murder possible and proximately caused her death, plaintiffs' claims are not barred by § 2680(h). This analysis applies the provisions of that section in an equitable and consistent manner, and thus prevents dismissal pursuant to the assault and battery exceptions regardless of whether Rowe was, under the law, a government employee and the person who fired the fatal shot. *Bryson v. United States, supra; Loritts v. United States, supra.*

### 2. The Discretionary Function Exception

Section 2680(a) excepts from the general waiver of sovereign immunity:

> Any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

Defendant argues that the allegations made by plaintiffs all relate to the exercise of discretionary judgment by the F.B.I. and that plaintiffs' claims are thus barred by § 2680(a). Defendant invites the court to focus its attention with regard to this issue on only two aspects of Rowe's involvement in the F.B.I.—to the authorization he received on the morning of the murder from his contact agent to go along on the mission, and to the decision made by high officials to utilize informants to penetrate Klan secrecy. However, the court declines to accept this invitation for it is at once both too narrow and too broad, and would require that the court overlook specific allegations in the complaint concerning activities which are not barred by the discretionary function exception.

The discretionary function exception immunizes the government from liability for acts or omissions of its employees while formulating policy. *Downs v. United*

*States,* 522 F.2d 990 (6th Cir. 1975). However, day-to-day activities of persons not engaged in determining the general nature of the government's business are not excepted from the general waiver of sovereign immunity by operation of § 2680(a). *Id.* The desirability of a convenient test for assessing whether governmental conduct amounts to the exercise of a discretionary function has led to the development of the "planning level—operational level" distinction, with only conduct falling into the former area excepted from the government's potential liability. In *Downs,* the court noted that the planning-operational distinction often focuses on the status of the person making the judgment. While not irrelevant to the analysis, the employee's status is not a sufficient test for determining whether any claim is barred by § 2680(a):

> We believe that the basic question concerning the exception is whether the judgments of a Government employee are of "the nature and quality" which Congress intended to put beyond judicial review .... Congress intended "discretionary functions" to encompass those activities which entail the formulation of governmental policy, whatever the rank of those so engaged. *Id.* at 997.

> The discretionary function exception does not insulate the Government from liability for all mistakes of judgment of its agents, but only for significant policy and political decisions which should not be circumscribed by customary tort standards. The word "discretion" in a statute is not used in a weak sense to mean "judgment" or "discernment" but rather in the strong sense to mean that an official has the "power of free decision" and is not bound by tort standards set by another authority such as a court. *Miller v. U. S.,* 583 F.2d 857, 866 (6th Cir. 1978).

██ From the foregoing it is clear that any claims relating to the formulation of government policy are barred by operation of § 2680(a), but that claims which arise out of the manner in which a particular situation is handled, and which are based on allegations that existing, valid regulations were wrongfully or negligently implemented are not so barred. *Downs, supra; Miller, supra.* Moreover, the mere exercise of judgment does not automatically insulate the government from liability for, as the court in *Downs* has noted, almost every human endeavor involves the exercise of judgment to some degree. *Downs, supra,* 522 F.2d at 995.

Plaintiffs in this case allege that negligent and wrongful acts of Rowe and certain F.B.I. agents proximately caused their mother's death, and that these acts were done in violation of state and federal law and F.B.I. policy. Plaintiffs specifically allege that Rowe was wrongfully and negligently recruited, trained, and supervised, and that Rowe and the F.B.I. wrongfully failed to prevent their mother's murder. Finally, plaintiffs assert that the F.B.I. contact agents wrongfully and negligently authorized the commission of illegal acts. All of this is alleged to be in contravention of state and federal law and F.B.I. policy, and to be a proximate cause of the murder.

██ To the extent that these causes of action can be read to attack the actual formulation of F.B.I. policy regarding the use of informants, plaintiffs' claims are barred. The government is correct in its argument that it has not waived its sovereign immunity for claims arising out of the decision to use informants or to "wage war" on the Klan. Equally correct is its argument that it cannot be liable for the formulation of policy with regard to how its informants are to be recruited, hired, trained, and supervised. Plaintiffs do not, however, challenge F.B.I. policy as negligently formulated, but attack instead the implementation of that policy vis-a-vis Gary Thomas Rowe. Plaintiffs' Supplemental Memorandum in Opposition to Motion to Dismiss, p. 6. As the following discussion demonstrates, these claims are not barred.

██ Defendant maintains that the decision made by Rowe's contact agent to instruct him to go along on the mission which culminated in Mrs. Liuzzo's murder was an exercise of a discretionary function. However, the similarity of the circumstances

surrounding that authorization to the facts before the court in *Downs* requires the conclusion that this is precisely the sort of day-to-day "judgment" which is not barred by § 2680(a).

In *Downs,* the government was sued for the deaths of hijacking victims resulting from the negligence of an F.B.I. agent. The agent in that case refused to accede to the hijacker's demand that the hijacked plane be refueled, and disabled the aircraft's engines with rifle fire. The hijacker then shot his hostages and himself. Hijacking policy had previously been promulgated by the F.B.I. The court concluded that the agent was not making policy in responding to the situation, and held that the claims were not barred by § 2680(a).

The decision of Rowe's contact agent to authorize Rowe's participation in the mission which ended Mrs. Liuzzo's life is of the same nature—a response to a particular situation. Like the agent in *Downs,* the agent in this case was operating under F.B.I. policy [5] on the recruitment and supervision of racial and criminal informants. He was not formulating policy when making this decision, and his actions were not meant to guide the actions of other government officials faced with similar situations. Compare *United States v. Faneca,* 332 F.2d 872 (5th Cir. 1964), *cert. den.* 380 U.S. 971, 85 S.Ct. 1327, 14 L.Ed.2d 268 (1965). Thus, his decision to authorize Rowe's participation in the mission was not of the nature

and quality which Congress intended to put beyond judicial review. *Downs, supra.*

The analysis employed in *Downs* reveals that plaintiffs' remaining claims regarding the implementation of F.B.I. policy by agents with regard to Rowe's recruitment, training, supervision and instructions are not barred by § 2680(a).[6] Accord, *Slagle v. United States,* 612 F.2d 1157, 1161 (9th Cir. 1980); *Swanner v. United States,* 275 F.Supp. 1007 (M.D.Ala.1967), rev. on other grounds, 406 F.2d 716 (5th Cir. 1969), on remand, 309 F.Supp. 1183 (1970); *Bryson v. United States,* 463 F.Supp. 908 (E.D.Pa. 1978).

In response to defendant's arguments that their claims are barred by § 2680(a), plaintiffs make an additional argument raising an issue which is unnecessary to resolve at this time. Plaintiffs argue that the discretionary function exception does not apply to unconstitutional and illegal acts, and that any policy authorizing such conduct would not be protected by § 2680(a). This argument is based primarily on *Hatahley v. United States,* 351 U.S. 173, 76 S.Ct. 745, 100 L.Ed. 1065 (1956), and *Birnbaum v. United States,* 588 F.2d 319 (2d Cir. 1978). To the extent that plaintiffs attack the implementation of F.B.I. policy with regard to Rowe, the court has already concluded that their claims are not barred by § 2680(a). The argument based on *Hatahley* and *Birnbaum* applies, if at all, if it is shown that F.B.I. policy authorized and sanctioned illegal and unconstitutional con-

---

**5.** It is clear that the F.B.I. had formulated policy with regard to the use of informants during the period in question, but the full scope of this policy and its precise terms do not presently appear in the record. The court and plaintiffs have received portions of the F.B.I. Manual of Instructions on the use of criminal and racial informants and portions of Agents Handbook on the use of informants. Counsel for defendant has been submitting these documents as they become available through efforts to respond to discovery requests, and it is not clear at this time that all relevant documents have been produced. Moreover, as plaintiffs allege that the policy as formulated was negligently and wrongfully implemented, and as material factual questions remain as to these allegations, these issues are not ripe for summary judgment. See note 6, *infra.*

**6.** Defendant also argues that the existing policy requirements were met by the F.B.I. with regard to Rowe. This argument is based on the policy directive that criminal and racial informants' stability and reliability be periodically evaluated, and positive evaluations of Rowe in these respects by his agents. This argument misses the mark, however, for plaintiffs assert that these evaluations were not made with the requisite degree of care. Whether Rowe's agents did act negligently or wrongfully in this respect presents a factual issue which cannot be resolved on this motion. For purposes of this discussion, it is sufficient that these claims are not barred by § 2680(a).

duct. This issue is reserved for decision pending development of the factual questions involved.

In summary, defendant's motion to dismiss on jurisdictional grounds is granted in part only. Section 2680 imposes exceptions to the general waiver of sovereign immunity contained in § 1346(b) and thus limits the permissible scope of this law suit. Under § 2680(h), the government is free from vicarious liability for Mrs. Liuzzo's murder. Under § 2680(a), the government is free from liability for claims arising out of the formulation of policy with regard to informants and the decision to use informants in its war on the Klan. However, plaintiffs' claims which are based on the negligent and wrongful conduct of government employees in the implementation of policy with regard to Rowe are not barred by either section. The question whether the discretionary function exception applies to claims arising out of acts done pursuant to policy which authorized illegal and unconstitutional acts is reserved pending the presentation of proofs on this issue.

B. *Motion to Dismiss for Failure to State a Claim on Which Relief can be Granted under F.R.C.P. 12(b)(6)*

Under 28 U.S.C. § 1346(b), the United States can be liable for negligent or wrongful acts or omissions of its employees under circumstances where the United States, "if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." The government bases its motion to dismiss for failure to state a claim on the argument that Alabama law, the state in which Mrs. Liuzzo was murdered, imposes no duty to warn of or prevent a crime. Plaintiffs argue that such a duty does exist, and that their complaint does state viable causes of action.

At the outset, two issues require clarification. First, although the government contends that plaintiffs' entire complaint fails to state a claim on which relief can be granted, its arguments are directed only to the causes of action based on the F.B.I. and

Rowe's failure to prevent the murder, found in paragraphs 18(b) and (e) of the amended complaint. Plaintiffs' other three causes of action are based on affirmative acts which allegedly caused Mrs. Liuzzo's death. Because defendant does not address itself to these causes of action, the court will likewise limit itself to the question whether the failure to prevent the murder by the F.B.I. and Rowe states a viable cause of action.

█ Second, plaintiffs' argument in opposition to the motion is based in part on the assertion that the duty owed to Mrs. Liuzzo arose by operation of the United States Constitution and federal law or regulations. It is clear, however, that constitutional torts as such are not recoverable under the FTCA. 28 U.S.C. § 1346(b); *Birnbaum v. United States,* 588 F.2d 319 (2d Cir. 1978). In a recent case, *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), the Supreme Court resolved the question whether a party's ability to seek recovery against the United States under the Federal Tort Claims Act barred a suit against the individual employees for the constitutional torts committed. In answering this question in the negative, the Court distinguished constitutional tort suits under *Bivens v. Six Unknown Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1976), from FTCA suits:

[A]n action under FTCA exists only if the State in which the alleged misconduct occurred would permit a cause of action for that misconduct to go forward. 28 U.S.C. § 1346(b) (United States liable "in accordance with the law of the place where the act or omission occurred"). Yet it is obvious that the liability of federal officials for violations of citizens' constitutional rights should be governed by uniform rules ... The question whether respondent's action for violations by federal officials of federal constitutional rights should be left to the vagaries of the laws of the several States admits of only a negative answer in the absence of a contrary congressional resolution. *Carlson v. Green, supra,* 446 U.S. at 23, 100 S.Ct. at 1474.

Thus, acts or omissions constituting constitutional torts support liability under the FTCA only if they constitute independent torts under state law. *Birnbaum, supra,* 588 F.2d at 329.

Plaintiffs fare no better with their assertion that defendant owed a duty of care which arose under federal statutes or regulations. Plaintiffs have not identified any specific statute or regulation which would govern the facts of this case, and the argument thus does not require detailed analysis. It is sufficient to note that breach of a duty imposed by federal law or regulation does not give rise to a cause of action independent of state law. The FTCA does not create substantive law, but rather allows suits against the United States based on the substantive law of the state where the wrongful act or omission occurred. Thus, federally imposed duties are relevant if, for example, state law creates a comparable duty, or if the state's common law recognizes the familiar doctrine that one who assumes a duty and thereby induces reliance on the performance of that duty, is liable for negligence in performance of that duty.[7] State law, however, remains the sole basis of liability.

It has thus been established that Alabama law governs the determination of the issues raised by the government's motion to dismiss. The question presented is whether Alabama law imposed a duty to prevent the murder under the facts as alleged in plaintiffs' amended complaint. A survey of Alabama law, however, reveals no authority directly on point. This court must there-fore act as it would in a diversity case, and predict what Alabama's highest court would do if faced with this issue. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); *Quinones v. United States,* 492 F.2d 1269 (3d Cir. 1974); *Peck v. United States,* 470 F.Supp. 1003 (S.D.N.Y. 1979). Reference to general principles of tort law is appropriate in making this determination.

 Discussion of the viability of plaintiffs' causes of action premised on the failure on the part of the F.B.I. and Rowe to prevent Mrs. Liuzzo's murder must start with the general rule that, absent other factors, there is no duty to prevent the commission of a tort or a crime. *Peck v. United States, supra,* 470 F.Supp. at 1016. See also, Restatement of the Law, Torts, 2d, § 314; Prosser, *Torts,* § 56 (4th ed. 1971) (hereinafter Prosser). Plaintiffs argue, however, that the facts alleged in their amended complaint create a situation in which such a duty should be imposed. Plaintiffs argue that because the F.B.I. recruited and trained and sent into action an unreliable and unstable informant over whom complete control was exercised, it is permissible to premise liability on the agents' failure to prevent the harm which they knew or should have known would occur to Mrs. Liuzzo. The court agrees.

Plaintiffs' theory of liability is premised on § 319 of the Restatement of the Law, Torts, 2d:

§ 319 Duty of Those in Charge of Person Having Dangerous Propensities

---

7. See, e. g., *United Scottish Ins. Co. v. United States,* 614 F.2d 188 (9th Cir. 1979), and cases cited at 192–98; *LeSuer v. United States,* 617 F.2d 1197 (5th Cir. 1980); *Gelley v. Astra Pharmaceutical Products, Inc.,* 466 F.Supp. 182 (D.Minn.) aff'd 610 F.2d 588 (8th Cir. 1979); *Devlin Lumber & Supply Corp. v. United States,* 488 F.2d 88 (4th Cir. 1973); *Zeller v. United States,* 467 F.Supp. 487 (E.D.N.Y.1979); *Geo. Byers Sons, Inc. v. East Europe Import Export, Inc.,* 463 F.Supp. 135 (D.Md.1979). The court is not unaware of authority to the contrary. See, e. g., *Blanton v. United States,* 428 F.Supp. 360 (D.D.C.1977); *Gill v. United States,* 429 F.2d 1072 (5th Cir. 1972). However, many of the cases appearing to adopt the theory that breach of federally imposed duties creates a cause of action cognizable under the FTCA can be explained on the bases of the "Good Samaritan" basis for tort recovery alluded to in *Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). See *United Scottish Ins. Co., supra,* 614 F.2d at 197, n.9. To the extent that there is authority for imposing liability for breach of duties imposed by federal law or regulations, the court declines to follow those cases, and adheres to the view that liability under the FTCA must be grounded in state substantive law. This result is required by the language of 28 U.S.C. § 1346(b) and is consistent with the Supreme Court's view of that section in *Carlson v. Green, supra.*

One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

The comment to this section describes its application to the situation

in which the actor has charge of a third person who ... has a peculiar tendency [to act injuriously] of which the actor from personal experience or otherwise knows or should know.

The theory of liability embodied in § 319 is one which is well established in tort law, and has been held to create a duty on the part of employers to control employees, institutions to control inmates, hospitals to control patients, and parents to control children. See generally, Prosser, at 349–50. The essence of a cause of action under § 319 is the relationship between the defendant and the tortfeasor. Where the defendant has the ability to control a person who is known or should be known to engage in injurious conduct, the law appropriately requires the defendant to use reasonable care to control that person in order to prevent harm.

An analogous basis for recovery has been recognized under the law of Alabama in *Swanner v. United States,* 275 F.Supp. 1007 (M.D.Ala.1967), rev. on other grounds, 406 F.2d 716 (5th Cir. 1969), on remand, 309 F.Supp. 1183 (1970). There it was held that the special relationship between the victim, a government informant, and the government gave rise to the government's duty to protect him.

Whenever there is reasonable cause to believe that a government agent or employee, or any member of his family, is endangered as a result of his performance of his duty to the government, a duty on the part of the government to protect him and the members of his family arises. 275 F.Supp. at 1011.

The concept that a special relationship—whether between the defendant and the victim or between the defendant and the tortfeasor—gives rise to a duty on the part of the defendant is well established in tort law. The court concludes, based on *Swanner* and § 319, that Alabama would recognize the cause of action asserted here. While defendant argues that the F.B.I. agents had no peculiar ability to control Rowe, significant factual questions remain as to the control exercised and exercisable as to this informant. Plaintiffs allege that the agents controlled Rowe, knew of his dangerous proclivities, and yet authorized him to take part in the mission which ended Mrs. Liuzzo's life. The facts as alleged state a cause of action premised on a duty to prevent harm which they knew or should have known would result.[8]

More troublesome, however, is plaintiffs' cause of action based on Rowe's failure to prevent the murder found in paragraph 18(b) of the amended complaint. The Restatement basis for liability would clearly not apply to this cause of action, as plaintiffs have not even alleged that Rowe controlled or was able to control the Klansmen with whom he traveled on the day of the murder. No other basis for imposing a duty to prevent crime on an informant/infiltrator has been presented.

The general rule in tort law is that there is no duty to prevent the commission of a tort or crime. *Peck v. United States, supra.* The presence of other factors may lead to the imposition of such a duty, but the court is aware of none in this type of situation. Moreover, imposition of liability on the United States for its informant's failure to prevent a crime committed in his presence would have profound ramifications on the decision to use informants to aid in the investigation of crime. The court's comments in an earlier opinion on the use of informants are equally relevant here:

This decision is not a discussion of the correct or incorrect methods of crime pre-

---

8. The theory of recovery recognized by § 319 of the Restatement rests on the commission of a tort by the person controlled by the defendant.

The court's holding that plaintiffs' cause of action based on § 319 is a valid one is similarly limited.

vention or law enforcement. It is not an effort to either condemn or praise any particular law enforcement agency for the methods it believes to be necessary to prevent and investigate crime. *Liuzzo v. United States*, 485 F.Supp. 1274, 1284 (E.D.Mich.1980).

██ Imposition of a duty on informants to prevent crimes committed in their presence would go beyond settled principles of tort law and would also have effects on the use of informants, effects which this court is reluctant to cause. For these reasons, the court declines to hold that, as a matter of law, Alabama would impose such a duty. Consequently, defendant's motion to dismiss for failure to state a claim on which relief can be granted is granted only as to paragraph 18(b) of the amended complaint.

Summarizing, defendant's motion to dismiss is granted in part only. The court lacks jurisdiction of those claims which assert the vicarious liability of the government for Mrs. Liuzzo's death, and those claims which arise out of the formulation of informant policy or the decision to use informants against the Klan. As to these claims, the motion to dismiss is granted. Plaintiffs' cause of action asserted in paragraph 18(b) of the amended complaint is dismissed for failure to state a claim on which relief can be granted. Defendant's motion to dismiss is denied as to the balance of the case.

III. *Motion to Compel*

Plaintiffs have moved for an order compelling defendant to produce for inspection and copying a copy of the "Rowe Task Force Report." Plaintiffs initially sought this report pursuant to a request for the production of documents, and defendant objected on the basis of privilege. Prior to setting forth the positions of the parties with respect to this motion, the court will give a brief history of the Report in question.

In July of 1978, members of the Senate Judiciary Committee, Senators Edward M. Kennedy and James Abourzek, indicated an intent interest in receiving a full report of an investigation of allegations that Gary Thomas Rowe had committed illegal acts while an F.B.I. informant.[9] Then Acting Attorney General of the United States Benjamin Civiletti directed the Office of Professional Responsibility[10] (OPR) to undertake an investigation of the F.B.I.'s handling of Rowe as an informant. A task force was created by the OPR and an investigation conducted. The report of the Task Force was delivered to the Attorney General in July of 1979.[11] This report is what is sought by plaintiffs.

Following receipt and review of the OPR Rowe Task Force Report, Attorney General Civiletti requested certain modifications which, as of mid-October, had not yet been made. Plaintiffs moved to compel the production of the report in October of 1980, 15 months after the report was first delivered to the Attorney General. Oral argument on this motion was heard on December 16, 1980. On the day before the hearing, the Attorney General released a document enti-

9. The Senators' interest in the conduct of Rowe as an F.B.I. informant was apparently sparked by reports in the *New York Times* and on the ABC network's television show "20–20" that Rowe had been involved in violent crimes and had shot Mrs. Liuzzo. First affidavit of Michael E. Shaheen, Jr., Counsel on Professional Responsibility, filed in *Playboy Enterprises, Inc. v. Dept. of Justice*, Civ. No. 80–1172 (D.D. C.), ¶ 3. The "Playboy" affidavits have been submitted by plaintiffs as exhibits.

10. The Office of Professional Responsibility was created in 1975, and serves as a special review and advisory body within the Department of Justice. It reports directly to the Attorney General or the Deputy Attorney Gener-

al, Associate Attorney General, or Solicitor General. The OPR receives and reviews information or allegations concerning conduct by members of the Department of Justice that may be in violation of the law, Department regulations or orders, or applicable standards of conduct. Declaration of Attorney General Benjamin Civiletti, ¶ 6, submitted in support of defendant's response in opposition to plaintiffs' motion to compel.

11. Declaration of Michael E. Shaheen, Counsel on Professional Responsibility, ¶ 4, submitted in support of defendant's response in opposition to plaintiffs' motion to compel.

tled "Summary of Results of the Department of Justice Task Force Investigation of Gary Thomas Rowe, Jr." (hereinafter Summary). The Summary is 25 pages in length; its release has not satisfied plaintiffs, and they still request an order compelling production of the entire report.

The OPR Task Force Report exceeds 300 pages in length. The Task Force's investigation focused on

(1) Whether the FBI's supervision of Rowe as an informant was adequate;

(2) Whether there was any evidence to support the allegation that Rowe was responsible for the death of Mrs. Liuzzo; and

(3) Whether federal prosecutors had reason to doubt Rowe's reliability and credibility as a principal witness in the federal civil rights case arising out of the Liuzzo shooting. Summary, at p. 2.

The Report contains information regarding Rowe's activities with the Klan from the time that he was recruited by the F.B.I. through the federal prosecution of the Klansmen for Mrs. Liuzzo's murder.[12]

Plaintiffs argue that the Report contains information relevant to their causes of action and is thus discoverable under F.R.C.P. 26. Defendant contends that the Report is protected from disclosure by operation of executive privilege, and in support of this contention, has submitted the declarations of Attorney General Benjamin Civiletti and Counsel on Professional Responsibility Michael E. Shaheen, Jr. On December 18, the court ordered defendant to produce the Report for an *in camera* inspection. Defendant's initial position, as reflected in its brief, was that the court should deny plaintiffs' motion to compel without resort to an *in camera* inspection of the document. During oral argument, however, the government indicated its willingness to produce the Report for the court's inspection if the court so ordered.

■ The component of executive privilege asserted by defendant in this case is

the "deliberative process" privilege. This privilege protects from discovery "intra-governmental documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Carl Zeiss Stiftung v. V. E. B. Carl Zeiss Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966), aff'd sub nom. *V. E. B. Carl Zeiss, Jena v. Clark*, 384 F.2d 979 (D.C.Cir.), cert. den. 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967). The theory on which the privilege is based is that candid and confidential internal debate is necessary to enable government officers to carry out their functions. "The purpose of this privilege is to foster freedom of expression among governmental employees involved in decision-making and policy formulation." *McClelland v. Andrus*, 606 F.2d 1278, 1287 (D.C. Cir.1979).

■ The privilege does not, however, provide blanket protection to intra-governmental communications. Factual data are not protected, as disclosure would not hinder the flow of information in the *decision making* process. *In re Franklin National Bank Securities Litigation*, 478 F.Supp. 577, 582 (E.D.N.Y.1979). The privilege protects communications that are a part of the decision making process, and raw data on which decisions can be formulated do not have the protection of the privilege. *McClelland v. Andrus, supra*, 606 F.2d at 1289; *Vaughn v. Rosen*, 523 F.2d 1136, 1143–45 (D.C.Cir. 1975).

The requirements for invoking the privilege are set forth in *United States v. Reynolds*, 345 U.S. 1, 7–8, 73 S.Ct. 528, 531–532, 97 L.Ed. 727 (1953):

There must be a formal claim of privilege lodged by the head of the department which has control over the matter, after actual personal consideration by that officer.

The declaration of Attorney General Civiletti includes such a formal claim, and sets

**12.** Second affidavit of Michael E. Shaheen in *Playboy Enterprises, Inc. v. Dept. of Justice.*

forth the reasons why the privilege has been asserted as to the Rowe report.[13]

The government argues that the Report is privileged because it relates to internal advisory policy deliberations of the Department of Justice. The government states that the Report is but a tentative draft that was submitted to the Attorney General for revision. According to defendant, the Report constitutes a part of the decision-making process within the Department of Justice, and is protected by the privilege. Although it concedes that the privilege is a qualified one which can be overcome by an adequate showing of need by plaintiffs, the government argues that plaintiffs have failed to show a need for the Report, as the material is discoverable in other ways and from other sources.

Plaintiffs maintain that the Report is not privileged, as it is simply a report of an investigation into Rowe's activities and related matters. As such, according to plaintiffs, it consists of factual data not protected by the privilege. Alternatively, plaintiffs argue that at least those portions of the Report that are factual should be segregated and produced. Plaintiffs also argue that they have a substantial need for the Report as the evidence accumulated therein is not otherwise available to them. They also point to the relevancy of the Report to their causes of action and argue that disclosure is particularly warranted in this case as the government is the defendant in an action based on serious and substantial allegations of its own wrongdoing. In this type of situation, according to plaintiffs, the weight given to the government's professed need for secrecy must be reduced.

This motion poses a difficult issue. A formal claim of privilege has been made by the Attorney General of the United States, and he asserts that disclosure of this document would jeopardize the internal decision-making processes of the Department of Justice. This claim cannot be taken lightly. Courts are and should be reluctant to interfere with the internal processes of another branch of government.

Also before the court, however, are the five plaintiffs, children of a slain civil rights

---

**13.** The declaration of Attorney General Civiletti is lengthy and will not be set forth in any detail. Summarizing, he asserts that the Report must remain confidential in order to: maintain the confidentiality of sources so as to avoid a chilling effect on future investigations; protect the ability of the Attorney General to receive reports with candor; protect certain grand jury material; protect the ability of the Department of Justice to respond to congressional inquiries; and, in general, maintain the effectiveness of the Department of Justice.

The declaration of Michael Shaheen is also offered in support of the claim of privilege. Mr. Shaheen states that he oversaw the work of the Task Force, and reviewed, commented on, and submitted the Report to Attorney General. He claims that the Report is a predecisional communication, and that to the extent that the Report includes factual accounts, these accounts are the composite product of selection, interpretation, and integration by the Task Force. According to Mr. Shaheen, there are no parts of the Report which are strictly factual and not part of the analytical process. Thus, he claims, no parts of the Report not already available can be segregated for release. He claims the Report must remain confidential in order to: protect the ability of the OPR and Department of Justice to receive information from individuals who would not come forward unless confidentiality is maintained; protect the lives of various informants; and protect the frank, candid environment within the Department of Justice necessary to the deliberative process.

Certain aspects of the declarations touch on privileges not briefed by defendant, e. g., the informant's privilege (protecting information which would jeopardize the safety of informants) and the protection of grand jury material under F.R.Cr.P. 6. This opinion does not deal with any privilege other than that briefed by the government, the deliberative process privilege. Defendant has attempted to reserve its ability to argue the applicability of these privileges should it become necessary. Memorandum to Accompany *In Camera* Submission, n. 1. The court's resolution of this motion has rendered defendant's position on the other privileges moot. However, the court notes that the better procedure would have been to present all privilege claims in the first instance in order to avoid the necessity: (1) to determine if the nonassertion of claimed privileges operates to waive those claims, and (2) if the privileges are not so waived, to determine the issues involved on a motion to compel on a piecemeal basis. The defendant is instructed to follow this approach if a similar motion is presented in the future.

worker. They claim their mother's death is attributable to the government's wrongdoing, and also that they cannot discover facts essential to the proof of their allegations without the compelled disclosure of this Report.

The claim in this case is made under Rule 34 of the Federal Rules of Civil Procedure, with reference to Rule 26(b) as to the scope of discovery permitted. Rule 26(b) provides that a party, in this case the plaintiffs, "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . ." The rule continues to emphasize the breadth of permissible discovery by stating:

> . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. Rule 26(b)(1).

The requested Report is relevant to the subject matter of this litigation. In fact it is a thorough investigation of Rowe's activities as an informant and his handling by the agents of the F.B.I., including his activity regarding the death of Mrs. Liuzzo. The Report contains information that would be admissible and would likely lead to the discovery of admissible evidence. Thus, except for the claim of privilege, the Report should be disclosed.

The court must accommodate the government's professed need for secrecy with the plaintiffs' need to prove their case. In reaching the proper resolution of the respective needs of the parties, guidance can be found in Proposed Rule 509 of the Federal Rules of Evidence.[14] Rule 509 recognizes the privilege asserted by the government in this case:

> (b) General rule of privilege—The government has a privilege to refuse to give evidence and to prevent any person from giving evidence upon a showing of reasonable likelihood of danger that the evidence will disclose . . . official information, as defined in this rule.

"Official information" is defined in Rule 509(a)(2) to include information

> within the custody or control of a department or agency of the government the disclosure of which is shown to be contrary to the public interest and which consists of: (A) intragovernmental opinions or recommendations submitted for consideration in the performance of decisional or policymaking functions . . .

Rule 509(e) suggests ways of accommodating the needs of the parties when a claim of privilege is sustained:

> If a claim of privilege is sustained in a proceeding to which the government is a party and it appears that another party is deprived of material evidence, the judge shall make any further orders which the interests of justice require, including striking the testimony of a witness, declaring a mistrial, finding against the government upon an issue as to which the evidence is relevant, or dismissing the action.

▮ In this case, a formal claim of privilege by the Attorney General has been asserted. It is argued that disclosure of the report would jeopardize not only the deliberative processes involved in this investigation but in other investigations as well. Although the government produced the Re-

---

14. This rule was one of the privilege rules not adopted by Congress. Congress instead adopted a privilege rule, Rule 501, which stated that privilege "shall be governed by the principles of the common law as they may be interpreted by the Courts of the United States in light of reason and experience." The considered judgment of the Advisory Committee on Rules of Evidence, the Committee on Rules of Practice and Procedure, the Judicial Conference and the Supreme Court in approving the draft of the privilege rules is strong evidence that the rule is in accordance with the principles of common law "in light of reason and experience." The rules were not rejected by Congress because they were incorrect, but because of serious doubts as to the right or wisdom of the adoption of privilege rules by means of the rule making process. The cases decided by the Supreme Court since the publication of the privilege rules are not inconsistent with the draft rule. *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).

port for *in camera* inspection in response to the court's order, it has maintained that the privilege can and should be sustained on bases of the declarations submitted.

In this situation, the court believes it would be inappropriate for it to go behind the declarations made by the Attorney General and Counsel on Professional Responsibility Michael Shaheen to make its own determination of the privilege claim. The declarations of these governmental officers are sufficient to find the Report presumptively privileged. Thus, although the court ordered the Report available for *in camera* inspection, no independent assessment of the privilege claim will be made which is based on the Report itself. This approach reduces judicial interference in the internal workings and autonomy of the executive branch, and gives due regard to the formal claim of privilege asserted by the Attorney General. This approach is particularly appropriate in a discreet civil action against the government. The government is in the best position to make the final judgment as to the need for the privilege when there are other effective ways to protect the plaintiffs.

The issue in this case is not the same as in *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). There the court was faced with a confrontation between the executive claiming privilege and the court's effort to provide a fair forum for the prosecution of crime. There the court held that in such a confrontation the court must determine whether the privilege exists. In no other way could the interests of a fair prosecution be accommodated. In this case, the confrontation is between the executive claim of privilege and the efforts of plaintiffs in a civil action to obtain evidence relevant to that action. There is no need for the courts to intrude in this type of case and make the harsh determinations necessary in the *Nixon* case. Here there are intermediate steps that can be taken to protect the privilege as claimed and also to protect the plaintiffs. This court therefore sustains the claim of privilege based on the affidavits supporting the claim and will not order the production of the Report as requested by plaintiffs.

Plaintiffs' needs, however, can and will be met. Plaintiffs have asserted a substantial need for the information contained in the Report, a need which cannot be met in any other way. If protection of the Report from disclosure truly "deprives the plaintiffs of material evidence" to prove their allegations, the court will follow the suggested procedure in Rule 509(e) and enter a finding of liability on the part of the defendant as to the claims dealt with earlier in this memorandum opinion that remain in the case. The extent of plaintiffs' damages will then be the remaining issue as to those claims.

This approach, it should be emphasized, is adopted to reconcile the competing interests present in this particular case. Plaintiffs have survived two substantive motions to dismiss, and have presented the court with a case which is neither frivolous nor beyond belief. Indeed, the converse is true. The record in this case reflects evidence of considerable violent and illegal activity on the part of Gary Thomas Rowe, activity which was, at least at times, apparently known of by his contact agents. The court is not here deciding that plaintiffs have shown a substantial likelihood of success on the merits, but rather is simply stating that their claims are based on allegations which are, in part, currently supported by some evidence.

Moreover, this approach is appropriate in this type of case because it allows plaintiffs to realize their goals—the award of money damages for their losses—while not intruding on the internal processes of the executive branch. Nor is the government unduly penalized by the court's resolution of this issue. The material protected here does not consist of "state secrets," disclosure of which would jeopardize the security or welfare of this nation. Rather, the material sought pertains instead to social norms and policies which in turn relate to choices made by the government when faced with law enforcement needs, competition between the rights of individuals and the conduct of

others, and options concerning the way in which it should react. The result reached by the court herein may not be appropriate in a "state secrets" case. See, Advisory Committee Notes to Rule 509(e). In the instant case, however, the accommodation reached by the court is both appropriate and equitable. Some of society has benefited from the conduct of the defendant with regard to its anti-Klan actions in the 1960s. The court's resolution of this issue operates to shift to society the burden of loss from those who presumably suffered due to governmental misconduct. When government claims the right to refuse information as to its conduct on the theory that harm would come to its efforts to protect society, that same society can recompense plaintiffs for their injuries.

The government asserts that there is no reasonable way in which facts in the Report can be separated from the conclusions. Because the substance of the Report deals directly with the issues involved in this law suit, because the government is claiming its privilege as to the whole Report, because the claim of privilege is sustained, and because the government asserts that there is no way in which non-privileged material can be separated out from the rest of the Report, only a very narrow issue remains for determination by this court. That issue is whether the plaintiffs are "deprived of material evidence" by the grant of the privilege. Proposed Rule 509(e). If they are, judgment of liability should be entered for the plaintiffs and a hearing set on damages. If they are not, the case should be set for trial on all issues remaining. Defendant points to the fact that over 10,000 pages of documents have been turned over to plaintiffs already. However, while the number of pages standing alone may appear impressive, mere numbers cannot reflect the adequacy of the information contained in the documents themselves. Plaintiffs point to the fact that many of their discovery requests have been objected to on various grounds, and state that the government "would have the court restrict plaintiffs' discovery within a circular cell which would bar access to the Report because its facts

were 'elsewhere available' and yet bar access to those facts because they were not 'discoverable.'" Letter to the court from counsel for plaintiff Jack Novik, January 5, 1981.

The issue of whether the plaintiffs are "deprived of material evidence" by the claims and grant of privilege will be set for hearing. The parties are invited to offer within ten days suggestions to the court on efficient and probative methods to resolve this issue.

So ordered.